[No. A034608. First Dist., Div. Four. June 29, 1987.]

RONALD BODENHAMER et al., Petitioners, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Real
Party in Interest.

**COUNSEL**

Misciagna, Schneider & Colombatto, N. A. Misciagna, P. R. Colombatto, Barbara J. Damlos and Dale E. Blunier for Petitioners.

No appearance for Respondent.

Long & Levit, John B. Hook, Michael L. Boli, Kornblum, Kelly & Herlihy, Kornblum, M c Bride, Kelly & Herlihy, Guy O. Kornblum, William B. Boone and Glen R. Olson for Real Party in Interest.

**OPINION**

**ANDERSON, P. J.**—On November 26, 1981, petitioners' jewelry store, Bodenhamer Jewelers, in Danville was burglarized resulting in a substantial loss to petitioners' stock in trade and to pieces of their customers' jewelry. Petitioners filed suit against their insurers, among others, alleging bad faith in handling claims arising from the burglary. St. Paul Fire and Marine Insurance Company, one of the insurers and real party in interest herein, had issued a special business owners policy providing coverage for business interruption loss and coverage for claims asserted against petitioners by third parties. On February 7, 1986, real party filed a motion for summary adjudication of issues as to both liability and business interruption coverages. The trial court granted the motion to the extent that the court effectively disposed of petitioners' causes of action against real party for breach of the implied covenant of good faith and fair dealing and for

violation of Insurance Code section 790.03, subdivision (h).[1] Petitioners challenge this decision by a timely petition for writ of mandate.

In opposing the motion for summary adjudication of issues, petitioners set forth the following facts regarding real party's handling of their customers' claims: On November 30, 1981, four days after the burglary, the adjuster employed by real party visited Bodenhamer Jewelers. He was informed that items of customer jewelry had been stolen in the burglary and was given a preliminary list of those customers' names. Shortly thereafter, the adjuster received phone calls from customers inquiring about their claims. No claims file was set up for the numerous customers' claims arising out of the burglary until March 25, 1982—four months after the burglary. On September 21, 1982, one of the customers brought suit against petitioners and two other lawsuits were filed a short time thereafter. On October 5, 1982, petitioners' attorney wrote to real party informing it that the failure to pay these customers' claims was causing damage to the goodwill of Bodenhamer Jewelers. On November 23, 1982, real party's attorney wrote to real party informing it that its liability for the customers' jewelry was reasonably clear. Despite this letter, real party on January 11, 1983, wrote to all 23 customers informing them that it was real party's position that its insured was not liable and hence there was no coverage under the St. Paul policy. It was not until March 1983, 15 months after the loss, that the first customers' payment was made. The most recent payment was issued on May 8, 1985, and as yet at least two claims have not been paid.

Petitioners supported the above allegations by declarations and exhibits thereto. In addition, petitioners filed with their opposition, declarations of former customers who stated that they had ill feelings toward Bodenhamer Jewelers because of the delay in handling their claims and, as a result, chose to do business with other jewelers.

In granting summary adjudication of issues involving causes of action for breach of the implied covenant of good faith and fair dealing and for Insurance Code violations, respondent court explained "The nub of Defendant's argument is that no cause of action arises as to these matters unless and until third party claims against Plaintiffs have resulted in a final determination of liability against them. Plaintiffs, on the other hand, assert that Defendant's improper handling of the liability claims gives rise to causes of action apart from any judgment of liability against Plaintiffs. The facts adduced show that while some claims remain outstanding, most of the third party claims have been settled and none have resulted in a judgment or other determination of liability against Plaintiffs."

---

[1] All further statutory references are to the Insurance Code unless otherwise indicated.

Respondent court went on to explain that the cases of *Bogard* v. *Employers Casualty Co.* (1985) 164 Cal.App.3d 602 [210 Cal.Rptr 578] and *Heninger* v. *Foremost Ins. Co.* (1985) 175 Cal.App.3d 830 [221 Cal.Rptr 303] "prevent plaintiff from asserting causes of action for breach of the implied covenant or breach of the statutory duties absent a determination of liability against plaintiffs by a third party claimant." Because of the holding that the tort action and statutory action would not lie, respondent court also held that punitive damages could not be recovered.

*Breach of the Implied Covenant*

The tort theory of breach of the implied covenant of good faith and fair dealing in California developed in a series of cases involving insurers' wrongful refusal to settle policy claims. (See Comment, *Reconstructing Breach of the Implied Covenant of Good Faith and Fair Dealing as a Tort* (1985) 73 Cal.L.Rev. 1291, 1293-1296.) The series started with the case of *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883] where the court stated that "[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (*Id.,* at p. 658; see also *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]; *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158].)

 Real party maintains that no cause of action for bad faith in the context of third party claims exists absent an unreasonable refusal to settle *and* the possibility of an excess judgment. In other words, the only benefit for which an insured bargains, according to real party, is for indemnity and the only duty of an insurer, other than the duty to defend, is to settle claims for which its insured is liable. Until liability is determined by a settlement admitting liability or a judgment against the insured, the duty is not breached. Although no case has so held, real party cites two federal cases to illustrate its position that "the possibility of excess recovery is the only permissible factor in the insurer's settlement decision." Neither case supports real party's position.

In *Zieman Mfg. Co.* v. *St. Paul Fire & Marine Ins. Co.* (9th Cir. 1983) 724 F.2d 1343, summary judgment for defendant was granted on a showing that the verdict against the insured was within the policy limits. The fact that there was also a verdict for punitive damages did not in itself establish bad faith in refusing to settle. The court made clear, however, that the insurer had clearly demonstrated that it conscientiously evaluated the claim. There was no evidence of bad faith in handling the claim.

The court in *Larraburu Bros., Inc.* v. *Royal Indem. Co.* (9th Cir. 1979) 604 F.2d 1208, actually rejected real party's position although it did so in dictum. The insurer in *Larraburu* had refused to settle within the policy limits but had paid the resulting excess judgment. It contended that paying the full amount of the excess cured any breach of duty, or, alternatively, prevented any breach of its duty from occurring. The court was unwilling "to accept this formulation as a general rule, for to say that a subsequent verdict within policy limits always exonerates an insurer for the consequences of an earlier failure to settle seems to us an unwarranted restriction on the insurer's duty to the insured under California law." (*Id.,* at p. 1214.) The court went on to point out that unreasonable conduct during the handling of the claim can be a proximate cause of injury before the final disposition of the claim as well as after. (*Id.,* at p. 1215; see also *ACandS, Inc.* v. *Aetna Cas. & Sur. Co.* (3d Cir. 1981) 666 F.2d 819, 823.)

The case of *Bogard* v. *Employers Casualty Co., supra,* 164 Cal.App.3d 602, upon which respondent court relied also does not support real party's position. In *Bogard,* the insureds alleged that their insurance company did not properly investigate a third party claim to determine its true value. The insurer, however, had settled the claim and the court held that the facts were not sufficient to set forth a cause of action for breach of the implied covenant of good faith and fair dealing. Although agreeing that the trial court properly sustained a demurrer, the reviewing court held that it should have given plaintiffs leave to amend their pleading "to show in some other way how they were deprived of their right to receive the benefits of the agreement by Employers' actions and what benefits they did not receive." (*Id.,* at p. 615.)

Here petitioners have made that showing. Their position is not simply that St. Paul failed to evaluate their customers' claims or failed to settle but that St. Paul with knowledge of the validity of the claims and the injury delay could do to petitioners' business, deliberately delayed settlement.

The stress real party places on the fact that its contract was only to indemnify and to defend indicates a misunderstanding, not of their contract, but of a cause of action for breach of the implied covenant of good faith in that contract. ■ "The covenant of good faith and fair dealing imposes obligations on the contracting parties separate and apart from those consensually agreed to; the obligations stemming from the implied covenant of good faith and fair dealing are imposed by law as normative values of society. [Citations.]" (*Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1169 [226 Cal.Rptr. 820].) The court in *Koehrer* went on to explain, paraphrasing *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573-574 [108

Cal.Rptr. 480, 510 P.2d 1032]: "[T]he obligations imposed by the implied covenant of good faith and fair dealing are not those set out in the terms of the contract itself, but rather are obligations imposed by law governing the manner in which the contractual obligations must be discharged—fairly and in good faith. [Citation.] While the specific nature of the obligations imposed by the implied covenant of good faith and fair dealing are dependent upon the nature and purpose of the underlying contract and the legitimate expectations of the parties arising from the contract [citations], those obligations are not the obligations that were consensually undertaken in the contractual provisions, and care must be taken in each case to determine whether the alleged breach is an obligation imposed by law and thus a tort [citation] or breach of an obligation consensually created by the parties in the terms of the contract and thus simply a breach of contract [citation]." (181 Cal.App.3d at p. 1169.)

 Real party stresses that it was dealing here with third party claims rather than a first party claim. Even were we to assume for the sake of argument that this distinction makes a difference, it is not supported factually because the gravamen of this law suit is the failure of real party to discharge its duty *to its own insured,* the petitioners. The fact that the customers of the insured are also injured as a result of that failure does not transform this action into a third party law suit. It is the damage sustained to its own business which is the basis for the insured's claim against its insurer. As our Supreme Court held in *Gruenberg* with respect to an insured's suit against its insurer (in discussing the implied convenant of good faith and fair dealing present in every insurance contact): "The duty to so act [fairly and in good faith] is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself." (*Gruenberg* v. *Gif Aetna Ins. Co., supra,* 9 Cal.3d at p. 575.) "[T]hat responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities." (*Id.* at pp. 573-574.) An insured "when determining whether to settle a claim, must give at least as much consideration to the welfare of its insured as it gives to its own interests." (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].) "The precise nature and extent of the duty imposed" by the implied covenant of good faith and fair dealing "will depend on the contractual purposes" but it is a duty *beyond* the express terms of the agreement between insurer and insured. (*Ibid.*)

 An express term of the liability contract is to pay claims of third parties where the insured is liable. An implied promise is to process the

claims in a manner which will not injure the insured, which in this case includes injury to the business. ▆▆▆▆ Whether real party here fulfilled this duty in processing the customers' claims and whether, if it failed, the failure was in bad faith was not before the trial court and is not before this court. The only issue raised by real party in its motion for summary adjudication was one of law. To paraphrase real party's argument to the trial court: Even if every statement made by the Bodenhamers in support of their opposition to the motion for summary judgment is true, real party is still entitled to summary adjudication because an insured, as a matter of law, can have no cause of action against its insurer for breach of the covenant of good faith until the insured has been required to pay a claim for which it was insured or is subjected to the possibility of an excess judgment due to an unreasonable refusal to settle. Real party is asserting a special defense to an action for bad faith which we reject without any evaluation of the factual allegations beyond that which would be made on a general demurrer. Clearly we do not intend to suggest, as real party seems to fear, that an insured may premise a bad faith action *solely* on the allegation that its insurer is taking too long to settle third party claims. That is a far cry from these petitioners' allegations which present a picture of an insurer that intentionally misrepresented its own assessment of the validity of customer claims, delayed settlement of those claims in bad faith, and caused injury to the good will of Bodenhamer Jewelers by its actions. We do no more than determine that petitioners are entitled to a trial on the issue of whether real party's actions in processing the customers' claims constituted a breach of the implied covenant of good faith and fair dealing with its insured.

*Violation of Section 790.03, Subdivision (h)*

The complaint against real party also alleges violations of section 790.03, subdivision (h), paragraphs (1), (2), (3), (4), (5), (6), (7), (12) and (13).[2] The

---

[2] Section 790.03, subdivision (h), provides as follows: "Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

"(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.

"(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

"(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

"(4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

"(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

"(6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought

subdivision prohibits certain unfair claims settlement practices. Petitioners were not allowed to pursue this cause of action because there had been no determination of their liability to third parties for their lost jewelry.[3]

■ This is a requirement that a *third party* claimant must meet before the third party claimant can maintain an action based on violation of section 790.03, subdivision (h). (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 884, 892 [153 Cal.Rptr. 842, 592 P.2d 329]; see also *Heninger* v. *Foremost Ins. Co.* (1985) 175 Cal.App.3d 830, 834 [221 Cal.Rptr 303]; *Doser* v. *Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883, 890-894 [162 Cal.Rptr 115].) No case has held, however, that it is a requirement that must be met when the insured, in contrast to the third party claimant, brings the action.

■ The duty of an insurer to its insured is more extensive than is its duty to a third party claimant. The duty of the insurer to the third party arises solely from the duty to indemnify the insured. The duty to the insured is based upon the contract relationship and includes the duty not to breach the implied covenant of good faith and fair dealing, a duty owed to the insured alone. (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 941 [132 Cal.Rptr. 424, 553 P.2d 584].) If, as concluded above, a duty to act reasonably and in good faith can arise prior to settlement, then a duty to comply with the statutory requirements of section 790.03, subdivision (h), can also arise prior to and independently of a final determination of the insured's liability.

Let a peremptory writ of mandate issue requiring respondent court to vacate its order on the motion for summary adjudication of issues insofar as

by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

"(7) Attempting to settle a claim by an insured for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

". . . . . . . . . . . . . . .

"(12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

"(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement."

[3] By affidavit, Robert J. Michalak, liability claims representative of St. Paul, states: "No settlement agreement executed by St. Paul and the various customers who submitted claims provides that the liability of the Bodenhamers was admitted. The settlement agreements executed by St. Paul and the customer claimants expressly state that liability is disputed and denied."

it granted the motion and to enter a new and different order denying the motion in its entirety.

Poché, J., and Sabraw, J., concurred.

A petition for a rehearing was denied July 20, 1987, and the petition of real party in interest for review by the Supreme Court was denied September 17, 1987.