[No. B047910. Second Dist., Div. Three. May 22, 1990.]

TRICOR CALIFORNIA, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
STATE COMPENSATION INSURANCE FUND, Real Party in
Interest.

**COUNSEL**

Rezak & Katofsky, Jeff Call Katofsky and Nicholas P. Roxborough for Petitioners.

No appearance for Respondent.

Krimen, Bjornsen & Klein, Charles Savage and Barbara Gallios for Real Party in Interest.

**OPINION**

**CROSKEY, J.**—Petitioners Tricor California, Inc., Tricor America Inc., and Tricor International (Tricor) seek a writ of mandate directing the

respondent court (1) to vacate its order sustaining without leave a demurrer to a cause of action asserted against the real party in interest State Compensation Insurance Fund (State Fund) and (2) to enter a new and different order overruling that demurrer.

Tricor's claim, to which its requested relief is directed, is based on an alleged violation of California's Unfair Practices Act (Ins. Code, § 790.03, subd. (h)).[1] The Supreme Court, in its decision in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal*), concluded that no private right of action exists in favor of third party claimants under that statute.  ▮▮▮▮▮  As we are persuaded that the reasoning of that decision applies equally well to first party claims[2] asserted by an insured, and the trial court's ruling was therefore correct, we deny the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

Given the limited issue presented by Tricor's petition, only a brief summary of the factual context in which it arises is required.

State Fund was, from October 30, 1985, until October 30, 1987, the worker's compensation insurer for Tricor. Commencing in June of 1988, Tricor requested State Fund to make available to Tricor certain of its claims records for those two policy years for the purpose of audit and review. Tricor's stated reason for such demand was to enable it to verify that State Fund had reviewed, monitored, investigated, evaluated, defended and settled claims in such a manner so as to ensure that reserves for claims against Tricor were properly set and, where appropriate, adjusted in a timely manner. Tricor claimed that State Fund's failure to discharge these obligations under the policy had a significant and negative impact upon the amount of premiums charged Tricor for such coverage.

Apparently Tricor did not receive a satisfactory response to its demand for such audit and review and, on October 3, 1989, it filed an action against State Fund. By its complaint, Tricor sought monetary damages and other

---

[1] Unless otherwise specified, all statutory references are to the Insurance Code.

[2] "[I]f the insured is seeking coverage against loss or damage sustained by the insured, the claim is first party in nature. If the insured is seeking coverage against liability of the insured to another, the claim is third party in nature." (*Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 399, fn. 2 [257 Cal.Rptr. 292, 770 P.2d 704].) Obviously, the claim of a third party against an insurer for violation of some statutory duty in the adjustment or settlement of that party's claim against an insured is likewise properly characterized as a "third party claim."

relief upon several theories,[3] including an alleged violation of the statutory duties imposed by several subsections of section 790.03(h).[4]

State Fund filed a demurrer to each alleged cause of action asserted by Tricor. The trial court held a hearing thereon on December 6, 1989, and sustained the demurrer (1) without leave to amend as to the fourth (breach of statutory duty) and sixth (declaratory relief) counts and (2) with leave as to the first (breach of implied covenant) and third (fraud) counts. As to the remaining counts, the demurrer was overruled. Tricor seeks writ relief here *only* as to the ruling on the fourth count.

The attack made by State Fund on that cause of action is somewhat confusing. State Fund argued in the trial court that Tricor could not state a claim because, under the rule announced in two cases (*Doser v. Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883, 892 [162 Cal.Rptr. 115] and *Moradi-Shalal*), "a party may not institute a cause of action under Insurance Code section 790.03 until a final determination in the underlying action is made." Whatever the accuracy of that statement in certain third party contexts, it has no application here in a first party case.

The question of the finality of a judgment determining an insured's liability, so critical to the third party claimant's bad faith action against an insurer, simply is not presented in a first party case. "No case has held [that a determination of the insured's liability] is a requirement that must be met

---

[3] Tricor filed an eight-count complaint alleging claims for (1) breach of implied covenant of good faith and fair dealing, (2) breach of fiduciary duty, (3) common law fraud, (4) breach of statutory duty, (5) breach of contract, (6) declaratory relief, (7) negligence, and (8) accounting.

[4] Section 790.03, subdivision (h) prohibits an insurer from "Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices."

The particular practices proscribed by subdivision (h) which are relevant here are:

"(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.

"(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

"(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

" . . . . . . . . . . . . . . . . . . .

"(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

" . . . . . . . . . . . . . . . . . . .

"(12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

"(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement."

when the insured, in contrast to the third party claimant, brings the action."
(*Bodenhamer* v. *Superior Court* (1987) 192 Cal.App.3d 1472, 1480 [238
Cal.Rptr. 177]. Further, of the five principal concerns expressed in *Moradi-
Shalal* which compelled a rule requiring final judicial determination of
insured liability in cases filed by third party claimants, none have any
application whatsoever in first party cases.[5]

The trial court held, as a matter of law, that *Moradi-Shalal*'s conclusion
that no private cause of action existed for a violation of section 790.03,
subdivision (h), applied to first party claims by insureds as well as to third
party claimants. Based on that conclusion, it ruled that Tricor had not, and
could not, state a cause of action for a violation of the statute. It therefore
sustained State Fund's demurrer without leave to amend.

Tricor then filed a timely petition for a writ of mandate. Because of some
apparent continuing confusion with respect to the application of *Moradi-
Shalal* to first party cases, as reflected by the arguments advanced by the
parties, we issued an alternative writ.[6]

## ISSUE PRESENTED

▮    The question presented to us may be simply stated. Can an insured,
in a first party context, state a cause of action against an insurer for an
alleged violation of section 790.03, subdivision (h), where that claim is filed
*subsequent* to the finality of the Supreme Court's decision in *Moradi-
Shalal* ?[7]

---

[5] As we have previously stated, "The court in *Moradi-Shalal* set forth essentially five concerns which it said compelled a rule requiring a judicial predetermination of the insured's liability: (1) the evidentiary problems which would arise if the insured's liability became an issue in the subsequent bad faith action (Evid. Code, §§ 1152, 1155); (2) the strong possibility that evidence of a prior settlement would improperly influence the jury's evaluation of the insured's liability; (3) the embarrassment to the settlement process if the parties had to relitigate the very issue which supposedly had been put to rest by a settlement; (4) the unfair advantage which would accrue to the third party claimant who could retain the settlement proceeds and still prosecute the bad faith claim for additional compensation; and, finally, (5) the risk that unnecessary conflicts would be created between insurer and insured by penalizing the former for choosing to settle the underlying action rather than pursuing it to a final judgment. (*Moradi-Shalal, supra*, 46 Cal.3d at pp. 311-312.)" (*State Farm Mut. Auto. Ins. Co.* v. *Superior Court* (1989) 211 Cal.App.3d 5, 11 [259 Cal.Rptr. 50].)

[6] In the interest of judicial economy, our review of this pleading issue by writ is appropriate. (*Coulter* v. *Superior Court* (1978) 21 Cal.3d 144, 148 [145 Cal.Rptr. 534, 577 P.2d 669].)

[7] In *Moradi-Shalal,* the court ruled that its decision could not be applied retroactively to pending cases that satisfied certain criteria. However, in this case we have no concern with

## DISCUSSION

On August 18, 1988, the Supreme Court handed down its decision in *Moradi-Shalal*. The decision became final on October 17, 1988. It overruled an earlier decision (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] [*Royal Globe*]) in which the court had held the Legislature, by its enactment of section 790.03, subdivision (h), had intended that a private cause of action would exist for unfair settlement practices by an insurance company. In *Royal Globe*, the Supreme Court had held that a violation by an insurer of the statutory provisions of section 790.03, subdivision (h), would support an action in tort for "bad faith" in third party cases in favor of *both* insureds and claimants.

Like *Royal Globe*, *Moradi-Shalal* was a third party case. The claimant and the insured were involved in an automobile accident which allegedly resulted in injury to the claimant. The accident occurred in July 1983 and, without filing suit, the claimant made demands upon the insured's carrier for a settlement in April and again in June of 1984. When no reply was received, the claimant filed the underlying action against the insured. In September 1984, only five months after the original demand, the case was settled for an amount which was about $1,800 less than the sum initially requested by the claimant. The underlying action was dismissed with prejudice. The claimant then filed her *Royal Globe* "bad faith" action. However, because the case had been settled and no judgment determining the insured's liability had been obtained, the trial court dismissed the action. Disagreeing with the trial court, the Court of Appeal reversed and held that a settlement and dismissal with prejudice was a sufficient determination and conclusion of the underlying action to permit a *Royal Globe* claim. The Supreme Court then granted a petition for review.

After an extensive consideration of (1) the history of statutory remedies for insurance company misconduct (2) the manner in which 19 other states had treated the issue (only 2 had even partially agreed with Royal Globe) and (3) the substantial legal commentary which had addressed the question, *Moradi-Shalal* concluded that the legislative intent underlying section

---

that qualification since this case was filed nearly 14 months after *Moradi-Shalal* became final. Thus, the only question which we need consider is whether the prohibition announced in *Moradi-Shalal* applies in first party cases.

However, we note that in *Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833, 840 [262 Cal.Rptr. 106], the court resolved the question of the viability of "pending" first party cases by holding that the rule of prospective application of *Moradi-Shalal* in third party cases should also be extended to first party cases. The court expressed the view that there should be some symmetry "in this window of surviving causes of action" and, in any event, such a result was compelled by simple fairness. A first party insured, which has a direct contractual relationship with an insurer, should not receive less judicial concern than a third party claimant who enjoys no such privity. (*Id.* at pp. 840-841.)

790.03, subdivision (h), had been "incorrectly evaluated." (*Moradi-Shalal, supra*, 46 Cal.3d at p. 292.) The *Moradi-Shalal* court emphasized that the *Royal Globe* decision (1) had been extensively criticized by legal commentators and rejected by other state courts, (2) did not define or direct the scope of the bad faith action, (3) encouraged multiple litigation (the so-called "settle and sue" syndrome) and (4) tended to create unnecessary conflicts of interest in the underlying action between insurers and insureds. (*Id.* at pp. 297-304.) It therefore held that no private cause of action was ever intended or existed for a violation of section 790.03, subdivision (h).

In affirming the trial court and overruling *Royal Globe*, the *Moradi-Shalal* court did not limit its discussion or reasoning to third party cases. "Noting that the California statute was derived from a model act which was then adopted by 48 states, the court finds that 'only two states other than California recognize a statutory cause of action for private litigants.' (46 Cal.3d at pp. 297-298.) In the discussion of scholarly criticism of *Royal Globe*, and in review of legislative history, the references are consistently to 'private rights of action' in general, rather than to third party claims alone. (*Id.* at pp. 298-300.) Although reference is made to the particularly 'unfortunate' consequence of imposing a duty by insurers directly to third parties (*id.* at p. 302) the general thrust of the court's discussion does not suggest limitation of its reasoning to third party cases." (*Zephyr Park* v. *Superior Court, supra*, 213 Cal.App.3d at p. 837 [*Zephyr Park*].)

*Zephyr Park* was a first party case in which the insured under a property damage policy sought to pursue a claim under section 790.03, subdivision (h). The court, after reviewing *Moradi-Shalal*, concluded that its rejection of *Royal Globe* extended to first party as well as third party cases. There were several reasons which it cited as compelling that result. First, as already noted, there was nothing in *Moradi-Shalal* which suggested that it was limited to third party cases. Indeed, *Royal Globe* itself appeared to have recognized that section 790.03, subdivision (h), supported a statutory cause of action for bad faith in first party cases. (*Royal Globe, supra*, 23 Cal.3d at pp. 885-886.)

Second, *Moradi-Shalal* expressly held that "Neither section 790.03 nor section 790.09 was intended to create a private civil cause of action against an insurer that commits one of the various acts listed in section 790.03, subdivision (h)." (*Moradi-Shalal, supra*, 46 Cal.3d at p. 304.) As *Zephyr Park* stated, "A literal adherence to this pronouncement mandates the exclusion of all private causes of action,0whether first or third party." (*Zephyr Park, supra*, 213 Cal.App.3d at p. 837; see also, *Industrial Indemni-*

*ty Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1093, 1097 [257 Cal.Rptr. 655].)[8]

Finally, and perhaps most significantly, first party insureds are not significantly affected by denial of the right to bring a statutory claim. Thus, "There is less reason to be concerned about depriving first parties of their use of section 790.03 as a basis for claims, than exists for third parties. First parties are in privity with the insurance carrier and typically have regular contract claims, including common law 'bad faith' claims, which can be pursued. Section 790.03(h) has been termed 'a codification of the earlier tort of bad faith, which historically is a breach of the duty of good faith and fair dealing which is implied in every contract [Citations.] [*sic*]' (*Richardson* v. *GAB Business Services, Inc.* (1984) 161 Cal.App.3d 519, 524 . . . ; see also *General Ins. Co.* v. *Mammoth Vista Owners' Assn.* (1985) 174 Cal.App.3d 810, 822 . . . .) The evident purpose of the legislation, as confirmed by *Moradi-Shalal*, was to vest in an administrative agency the power to police 'bad-faith' practices in the industry. The creation of section 790.03(h) did nothing either to expand or restrict the preexisting common law right of action; the limitation of the utilization of section 790.03 to governmental entities should similarly have no effect upon the common law private right of action. There is simply no need, therefore, to perpetuate the availability of section 790.03(h) as the basis for first party causes of action." (*Zephyr Park, supra,* 213 Cal.App.3d at pp. 837-838, fns. omitted.)[9]

---

[8]Tricor's argument with respect to the decision in *Industrial Indemnity* v. *Superior Court, supra,* 209 Cal.App.3d 1093 is puzzling. In that case, the court distinguished the application of another case, decided under Business and Professions Code section 17203, which had held that the existence of a penal or regulatory statute enacted for the benefit of a class of consumers gave members of that class a right to sue in tort. The *Industrial Indemnity* court stated that whatever the efficacy of that rule "in other areas of law, it can have none in [a suit against an insurer for violation of Unfair Practices Act] after the decision" in *Moradi-Shalal.* (*Id.* at p. 1097.) The court then stated, "As the parties here agree, a private right of action to many members of the class of consumers for whose benefit section 790.03, subdivision (h), of the Insurance Code was enacted does not exist after that decision." (*Ibid.*; italics supplied.) Tricor urges such language as support for its argument that "if no private right of action remained, the *Industrial Indemnity* court would have said all members, not many members." Tricor asserts that the court thereby recognized that insureds, in first party actions, retained their statutory right to sue. We reject this as a non sequitur. *Moradi-Shalal* left viable certain pending statutory actions. Those still exist and the court in *Industrial Indemnity* was merely recognizing this fact and nothing more.

[9]Tricor urges that *Safeco Ins. Co.* v. *Superior Court* (1990) 216 Cal.App.3d 1491 [265 Cal.Rptr. 585], has construed *Moradi-Shalal* as having an application limited to third party cases. We have searched *Safeco* in vain for any such language. Safeco did not pretend to set forth an analysis of *Moradi-Shalal* and, indeed, contained nothing more than a passing reference to one of the consequences of that important decision.

We agree entirely with the reasoning and analysis of the court in *Zephyr Park*[10] and see no reason whatever not to reach the same conclusion here.

### DISPOSITION

The alternative writ is discharged. The peremptory writ is denied.

Danielson, Acting P. J., and Pounders, J.,* concurred.

Petitioners' application for review by the Supreme Court was denied August 1, 1990.

---

[10] And so, presumably, did the Supreme Court, which denied a petition for review on November 2, 1989.

* Assigned by the Chairperson of the Judicial Council.