[No. C006895. Third Dist. Sept. 24, 1991.]

JESUS RAMIREZ, Plaintiff and Appellant, v.
USAA CASUALTY INSURANCE COMPANY, Defendant and Appellant.

**COUNSEL**

Schaefer, Walker & DeMartini, John F. Macgregor and Daniel U. Smith for Plaintiff and Appellant.

Stumbos & Mason, Stephen A. Mason and David Yost for Defendant and Appellant.

**OPINION**

**CARR, J.**—The critical issue tendered by this appeal is whether an insurer owes a duty to its insureds to disclose within a reasonable time the existence and amount of underinsured insurance coverage which may or may not

become operative depending on the adequacy of the available bodily injury liability insurance. If such a duty exists, the specific question on this appeal is whether a factual basis for the breach of that duty has been presented by the respondent herein. We shall find that an insurer owes such a duty and that plaintiff Ramirez on the granting of a new trial was properly given leave to amend to state a cause of action based on such breach.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts as disclosed by the original complaint are that Jesus Ramirez (Ramirez), then 16 years of age, was the passenger of Todd Rentsch, who was driving a motorcycle insured by USAA Casualty Insurance Company (USAA).[1] On November 16, 1985, in Lake County, their vehicle collided with a car alleged to have been negligently driven by James Dean Murr (Murr). Murr had only a $15,000/$30,000 bodily injury liability policy issued by American Excel Corporation.[2] Ramirez was severely injured. Rentsch's policy contained underinsured motorist coverage of $100,000. Initially, upon inquiry by Ramirez's attorneys, agents of USAA advised that Rentsch's policy provided no coverage for Ramirez's injuries. On July 17, 1987, however, they told Ramirez about the underinsured motorist provision, and Ramirez filed a claim therefor. On February 1, 1988, USAA denied the claim as untimely as it was not filed within one year of the accident.

On April 22, 1988, Ramirez filed a complaint against USAA, and Gene Riggs Company and Cleo Nielsen (collectively, Riggs). The complaint alleged five causes of action based on these facts. The first was for bad faith, including tortious denial of the existence of insurance coverage. The other causes of action were for intentional and negligent misrepresentation, suppression of facts, and breach of fiduciary duty. Each was based on the failure by USAA to inform Ramirez about the existence of potential coverage for his injuries under the Rentsch policy.

USAA answered with a general denial, and raised the affirmative defenses of failure to state a cause of action and comparative fault on Ramirez's part.

USAA cross-complained for equitable indemnity against Ramirez and Peter Windrem and David Herrick, Ramirez's attorneys. The cross-complaint was stricken, and the court denied USAA leave to amend it.

---

[1] The policy was issued to Robert L. Rentsch, Todd's father, and is not in the record. This defect in pleading was not raised below or on appeal. Apparently USAA believed Ramirez adequately pleaded the legal effect of the policy terms. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 468, p. 507.)

[2] This is the minimum required by law. (Veh. Code, § 16056.)

USAA then moved for summary judgment or summary adjudication of issues. The trial court treated the motion as one for judgment on the pleadings and granted the motion. The parties stipulated that the action against Riggs would be stayed pending any appeal of the ruling on USAA's motion.

The order and judgment of dismissal was filed on April 11, 1989.

In the judgment of dismissal the trial court ruled that the underinsured motorist coverage did not apply until the bodily injury liability policies of the vehicles causing the accident had been exhausted.[3] The court also ruled the suit on the policy was not untimely, as no cause of action on the policy could accrue until the action establishing liability under the other policies had been concluded. The court granted judgment on the pleadings because "The complaint does not state a cause of action for bad faith or fraud since duties under the underinsured coverage do not arise until the conditions noted above occur."

On May 8, 1989, Ramirez filed a motion denominated a motion for a new trial or to vacate the judgment. Attached to the motion was a proposed amended complaint. The court granted "reconsideration," modified the prior order to permit leave to amend and ordered the amended complaint filed.[4]

---

[3]The judgment reads: "Insurance Code Section 11580.2(p)(3) provides in part: 'This coverage [underinsured motorist] does not apply . . . until the limits of bodily injury liability policies applicable to all insured motor vehicles *causing the injury* have been *exhausted by payment of judgments or settlements* . . . (italics added).' It can be inferred from undisputed facts that the underlying suits against both Murr and Rentsch are not yet decided and there have been no judgments or settlements. By its terms, the coverage does not yet apply. While the use of 'reimbursement' in subsection (5) would indicate that the carrier of underinsured coverage may pay in advance of such determination, the coverage does not, in fact, arise until a determination as to other coverage.

"The complaint does not state a cause of action for bad faith or fraud since duties under the underinsured coverage do not arise until the conditions noted above occur.

"The court determines that the provisions of Section 11580.2 (a) through 11580.2(o) which require an action to be filed within one year from the date of the accident are inconsistent with the provisions of Insurance Code Section 11580.2(p)(3), and the provisions of subsection (p) therefore control, and the one year statute of limitations does not commence until plaintiff has exhausted by payment of judgments or settlements the limits of bodily injury liability polic[i]es applicable to all insured motor vehicles causing the injury.

"Defendant's motion is deemed one for judgment on the pleadings, and is hereby granted without leave to amend as to bad faith and fraud on the subject of underinsured motorist coverage; . . ."

We imply no view upon whether the trial court was correct in concluding that the limitations provisions of section 11580.2 are tolled until completion of the third party coverage exhaustion requirement.

[4]The order does not clearly state the nature of the relief granted, and the trial court suggested it was granting a new trial. As an order granting a new trial is the appropriate

The new trial was granted by an order denominated "Order of Modification of Prior Order of Dismissal," which recited "The Court's prior ruling [summary judgment deemed a motion for judgment on the pleadings, granted without leave to amend] was based upon the Court's interpretation of the underinsured motorist statute as not providing coverage until the conditions listed in Insurance Code § 11580.2 (p)(3) have occurred and the statute of limitations not running from the date of the accident as to *under*insured motorists. [¶] The Court reaffirms this interpretation. "The decision to not grant leave to amend was based upon the theory that until coverage arises it is not bad faith for an insurer to deny coverage or withhold information as to this coverage. Upon reconsideration, the Court agrees with plaintiff that bad faith could occur prior to the coverage's effectiveness as argued by plaintiff—the decision as to how to deal with 'all insured motor vehicles causing the injury' as required by statute *is affected* by nondisclosure of coverage. Reconsideration granted as to the proper application of the law. The prior ruling is modified to grant leave to amend. The proposed first amended complaint is ordered filed; ten days to respond."[5]

USAA appealed from the order granting a new trial. Ramirez cross-appealed from the original order granting judgment on the pleadings.[6]

Ramirez filed suit against Murr and Rentsch in Lake County on June 4, 1987. After the filing of this suit, on July 17, 1987, as noted, USAA told Ramirez about the underinsured coverage, but when he filed a claim it was denied as untimely.[7] At oral argument the parties stipulated to the following facts: (1) Murr settled the Lake County case (No. 23025) for the policy limits of $15,000, (2) Ramirez's damages for his injuries exceed $100,000 and (3) Ramirez was not negligent.

---

method of granting leave following judgment on the pleadings without leave (*Carney* v. *Simmonds* (1957) 49 Cal.2d 84, 87-88, 90-91 [315 P.2d 305]), we shall treat the order as an order granting a new trial, as do the parties.

[5]The amended complaint was substantially similar and set out the same five causes of action. The amended complaint added an allegation that on November 25, 1985, defendant Cleo Nielsen interviewed Ramirez, who was still in the hospital as a result of the accident nine days before. Nielsen determined his injuries were severe, and "reported her findings to the defendant USAA, asking for verification of [underinsured motorist] coverage." Ramirez, a minor, relied on the statements of Nielsen and USAA that there was no coverage to be had under Rentsch's policy. Ramirez filed suit against Murr and Rentsch in Lake County on June 4, 1987. On July 17, 1987, USAA told Ramirez about the coverage, but when he filed a claim it was denied as untimely.

The adequacy of the amended complaint is not at issue here.

[6]Such a protective cross-appeal is proper. (8 Witkin, *op. cit. supra*, Attack on Judgment in Trial Court, § 131, p. 534; 9 Witkin, *op. cit. supra*, Appeal, § 392, p. 391.)

In the cross-appeal Ramirez asks us to review the propriety of the order granting judgment on the pleadings only if we reverse the order granting a new trial. In light of our disposition we have no occasion to review fully the first order.

[7]The untimely defense originally tendered for denial of Ramirez's underinsured motorist claim was abandoned by USAA in its motion for summary judgment and on this appeal.

DISCUSSION

I. *Standard of review.*

USAA appeals from the order granting a new trial. A new trial may be granted for "Error in law, occurring at the trial and excepted to by the party making the application." (Code Civ. Proc., § 657, subd. 7.) ■ The trial court had no discretion to grant a new trial unless its original ruling, as a matter of law, was erroneous. (8 Witkin, *op. cit. supra*, Attack on Judgment in Trial Court, § 133, p. 536.)

■ A judgment on the pleadings is governed by the standards governing a judgment following a successful demurrer. (6 Witkin, *op. cit. supra*, Proceedings Without Trial, § 263, p. 565.) A general demurrer admits the truth of all material facts alleged in the complaint. If there is a reasonable possibility the defect can be cured the plaintiffs should be given leave to amend. (*Concerned Citizens of Costa Mesa, Inc.* v. *32nd Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 936 [231 Cal.Rptr. 748, 727 P.2d 1029]. See *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) If there can be no liability as a matter of law the pleader should be given no leave to amend. (*Lawrence* v. *Bank of America* (1985) 163 Cal.App.3d 431, 436-437 [209 Cal.Rptr. 541].) As we shall determine, the factual basis for causes of action based on the failure, negligent or intentional, to disclose the underinsured insurance coverage existed. To resolve the appeal we must determine if the court's original grant of judgment on the pleadings without leave to amend was erroneous. We shall find the trial court's original order was erroneous at least insofar as it denied leave to amend and the new trial with leave to amend was properly granted.

II. *An insurer owes a duty to disclose to its insured under a policy within a reasonable time after an accident the existence and amount of any underinsured insurance coverage.*

We are here concerned with the duty of an insurer to an insured under the policy. ■ Ramirez was a passenger on the insured motorcycle at the time of the accident and was therefore an insured under the USAA underinsured policy provisions pursuant to Insurance Code section 11580.2, subdivision (b) which provides in pertinent part that the term " 'insured' means the named insured and . . . any other person while in or upon . . . an insured motor vehicle . . . ." Under the underinsured motorist coverage, it is not necessary that an insured be a party to the insurance contract at issue. As stated in *Cancino* v. *Farmers Ins. Group* (1978) 80 Cal.App.3d 335 [145

Cal.Rptr. 503] (at pp. 338-339): "The duty of an insurer to deal in good faith is an aspect 'of the relationship between the defendant insurer and its insured.' [Citation.] Though an insurance contract is indispensable to the existence of such relationship and the insurer must by definition be a party, insureds often are not. This circumstance, however, does not alter the fact that the coverage is provided for their benefit and does not exempt the insurer from the obligations imposed by the public policy of this state protecting insureds from 'unfair . . . practices in the business of insurance.' [Citation.]"

The statutory scheme which frames the dispute herein is found in Insurance Code section 11580.2, which defines the parameters of uninsured motorist coverage.[8] Subdivisions (a) through (m) discuss uninsured motor vehicle coverage. Subdivision (i) provides a one-year period for commencement of acts prerequisite to recovery on the policy.[9] Subdivision (p) applies "only when bodily injury . . . is caused by an underinsured motor vehicle," and its provisions prevail over the rest of the statute. (Subd. (p); *Campbell* v. *State Farm Mut. Auto. Ins. Co.* (1989) 209 Cal.App.3d 871, 876 [257 Cal.Rptr. 542]; 3 Cal.Ins. Law & Prac. (1990 rev.) Automobile Insurance, § 50.18[8], pp. 50-78.2-3.) An underinsured vehicle is a vehicle insured "for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person." (Subd. (p)(2).) The coverage "does not apply to any bodily injury until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of the payment is submitted to the insurer providing the underinsured motorist coverage." (Subd. (p)(3). See generally 2 Widiss, Uninsured and Underinsured Motorist Ins. (2d ed. 1990) § 44.2, pp. 124-127.) The maximum liability of the insurer "shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury." (Subd. (p)(4); *Malone* v. *Nationwide Mutual Ins. Co.* (1989) 215 Cal.App.3d 275 [263 Cal.Rptr. 499].)

The complaint alleged Murr's vehicle was covered by the minimum $15,000 bodily injury liability policy, while Rentsch's vehicle was covered by a $100,000 uninsured motorist provision. The complaint also alleged

---

[8]Unspecified subdivisions refer to this section.

[9]Subdivision (i) is as follows: "No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless one of the following actions have been taken within one year from the date of the accident: [¶] (1) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction. [¶] (2) Agreement as to the amount due under the policy has been concluded. [¶] (3) The insured has formally instituted arbitration proceedings."

Murr's negligence caused Ramirez's bodily injuries.[10] The Murr vehicle was "underinsured" as defined by subdivision (p)(2). The underinsured motorist coverage would apply when the limits of Murr's policy were exhausted by judgment or settlement. (Subd. (p)(3).)

 Ramirez contends and the trial court agreed that USAA had a duty to tell him about the existence of the underinsured motorist provision of Rentsch's policy and the amount of such coverage. This contention has merit.

 It is basic that an insurer has a duty to disclose policy terms to its insureds. In *Davis v. Blue Cross of Northern California* (1979) 25 Cal.3d 418 [158 Cal.Rptr. 828, 600 P.2d 1060], in which our Supreme Court upheld the trial court's finding of a breach of the covenant of good faith and fair dealing and a waiver of the right to compel arbitration for failure to inform insureds of the arbitration provision, the court stated:

"One important facet of the insurer's obligation to give the insured's interest 'as much consideration . . . as it does . . . its own' is the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy. In particular, in situations in which an insured's lack of knowledge may potentially result in a loss of benefits or a forfeiture of rights, an insurer has been required to bring to the insured's attention relevant information so as to enable the insured to take action to secure rights afforded by the policy." (25 Cal.3d at p. 428.)

A similar conclusion was reached in *Sarchett v. Blue Shield of California* (1987) 43 Cal.3d 1 [233 Cal.Rptr. 76, 729 P.2d 267], wherein the court found the failure of Blue Shield to advise its insured of his contractual right to impartial review and arbitration of a disputed claim while repeatedly denying the claim was bad faith. (*Id.* at pp. 13-15 (plur. opn.), 19, fn. 1 (conc. opn.). See also *Dercoli v. Pennsylvania Nat. Mut. Ins.* (1989) 520 Pa. 471 [554 A.2d 906, 909] [citing *Sarchett, supra,* and *Gatlin v. Tennessee Farmers Mut. Ins. Co.* (Tenn. 1987) 741 S.W.2d 324].)

We have found one case discussing the duty to disclose in connection with underinsurance. In *Gatlin v. Tennessee Farmers Mut. Ins. Co., supra,* 741 S.W.2d 324, the same insurance company issued policies to each automobile involved in a two-car collision. The insurer knew the negligent motorist had a small policy, but failed to disclose that fact to the other motorist. The court held the insurer could not thereafter assert that its insured's claim was untimely, because it had breached its duty to disclose "coverage and policy requirements when (1) it is apparent to the insurer that there is a strong

---

[10]The original complaint did not allege any negligence on Rentsch's part.

likelihood that its insured only can be compensated fully under her own policy and (2) that the insured has no basis to believe that she must rely upon her policy for coverage." (*Id.* at p. 326.) The court held the insurer had breached its duty to disclose coverage requirements. (*Ibid.*)[11]

USAA seeks to distinguish *Davis* and *Sarchett* on the ground that those cases involved an insurer dealing "directly" with an insured. If USAA means it owed no duty to Ramirez, because he was not a party to the insurance contract, we earlier noted that Ramirez was an insured by reason of his passenger status. Ramirez was statutorily an insured under the USAA policy pursuant to the Insurance Code.

If USAA's point is that Ramirez dealt with it through attorneys, rather than "directly," we do not perceive how USAA's duty to disclose has been changed. USAA's claim that Ramirez had constructive knowledge of the underinsurance provision because he was represented by attorneys and "such coverage is required by Insurance Code Section 11580.2(p)(7)" is ill-founded. The section cited mandates underinsurance coverage only where uninsured coverage is obtained. Subdivision (a)(1) permits the deletion of uninsured motorist coverage. As USAA acknowledges elsewhere, Ramirez pleaded lack of any knowledge about the policy.

USAA next maintains it had the right to withhold this information since under subdivision (p), all bodily injury insurance policies applicable to the accident must first be exhausted and the third party suit in Lake County against Murr and Rentsch, in which there is a total of $115,000 of bodily injury liability insurance coverage, was unresolved. The policy coverage of the underinsurance had therefore not yet become operative.

This assertion bears a close alliance to the rejected argument that actions for bad faith by an insured against an insurer on a homeowner's policy are premature until any action against a third party is resolved. In *Carter* v. *Superior Court* (1987) 194 Cal.App.3d 424 [239 Cal.Rptr. 723], (at pp. 427-428) the court explained, "Establishing the fault of third parties is not a prerequisite to trial or disposition of the suit against her insurer. Petitioner's argument that in the resolution of the coverage issue the insurer acted in bad faith is not necessarily dependent—either in law or in fact—upon the entry of judgment in petitioner's action for or against the third parties."

---

[11]The *Gatlin* court refers loosely to "uninsured" motorist coverage, though the syllabus and headnotes refer to "underinsured" coverage. (741 S.W.2d 324.) Since the tortfeasor is described as having a $10,000 policy, it is clear he was not "uninsured." The explanation is that Tennessee, unlike California, defines "uninsured motor vehicle" to include an underinsured vehicle. (Tenn. Code Ann. § 56-7-12-2.)

Nor is an insured required to await the determination of insurance coverage before filing an action in bad faith against the insurer. In *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1986) 184 Cal.App.3d 1428, 1433-1434 [229 Cal.Rptr. 409], this court held that an insured's cross-complaint for damages for breach of the covenant of good faith and fair dealing in the insurer's action for declaratory relief to determine coverage was not premature. The problems created by such joinder of issues was only one of scheduling for the trial courts. (See also *Bodenhamer* v. *Superior Court* (1987) 192 Cal.App.3d 1472, 1476-1479 [238 Cal.Rptr. 177] [insured sued by third parties].)

This rule is equally applicable to an action for bad faith breach of the insurer's duty to disclose to an insured the existence and amounts of underinsurance. An insurer is not entitled to delay disclosure of policy existence and terms of underinsurance on the ground the insured must first resolve any actions against third parties. In reality the need for disclosure at an early date is more urgent in this situation so as to enable an injured insured to make meaningful decisions on how to conduct litigation and to refrain from useless lawsuits against persons with no liability with the delay and expense attendant upon such suits. This rule is analogous to the rule that, when the insurer accepts a tendered defense, the insurer must act in good faith, even if coverage is disputed. (*Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 188 [231 Cal.Rptr. 791].)

Ramirez was not able to sue on the policy until the liability of Murr in causing the accident had been determined. However, he could pursue tort remedies for USAA's failure to advise him there was coverage available for him as an insured under Rentsch's policy. Knowledge of the existence of the policy coverage was crucial in determining his litigation strategy. (See Magarick, Excess Liability (3d ed. 1990) Other Evidence of Bad Faith, § 12.12, p. 12-17.)

Here Ramirez alleged he was misinformed about coverage within one year of the accident. He then delayed in filing suit (to wit, arbitration) against potential tortfeasors until more than one year from the date of the accident, doubtless relying upon his status as a minor. This delay could have resulted from the small prospects for a substantial third party recovery. However, if he had known of the $100,000 underinsurance coverage contingent upon resolving any third party claim his inducement for prompt resolution would have been much greater. Obviously he is harmed and USAA benefited by any such delay.

Moreover, USAA took advantage of the delay in filing the third party action to deny coverage on the ground of untimeliness when Ramirez did file

a claim. While this defense has now been abandoned, the further delay it engendered is squarely attributable to the original failure to inform Ramirez of coverage. The denial of benefits and delayed receipt of benefits could have caused the emotional distress alleged. Indeed, failure to inform a seriously injured insured about the existence of such coverage in some cases could cause emotional distress merely by prolonging anxiety regarding the financial consequences of the injury. (See generally, *Merrill* v. *Los Angeles Gas & Elec. Co.* (1910) 158 Cal. 499, 512-513 [111 P. 534].)

For this reason the trial court correctly determined it should give Ramirez leave to amend, because it was possible for Ramirez to state a cause of action alleging damages for the bad faith refusal to disclose coverage under the policy.

III. *USAA's defense that underinsurance coverage does not arise until Ramirez exhausts his potential remedy of liability insurance under its policy has no merit.*

At oral argument, the parties stipulated that Murr settled the Lake County case for the policy limits of $15,000, that Ramirez's damages exceed $100,000 and that Ramirez was not negligent. In view of these stipulated facts, it follows that when Murr settled, USAA had a duty to pay to Ramirez at least $85,000 within a reasonable period of time.

USAA urges Ramirez cannot state a cause of action based on bad faith denial of benefits: "As set forth . . . USAA denies that the Rentsch vehicle was an underinsured motor vehicle as defined in the Insurance Code. It follows, therefore, that no duty arose to pay underinsured motorist benefits at the time when Murr settled." We agree with USAA's premise that the Rentsch vehicle was not underinsured, but we disagree with its conclusion.

There can be no underinsurance claim between insureds under the same policy. This ensues since under the statute an underinsured vehicle is a vehicle insured for "less" than the amount of insurance on the vehicle causing the injury. Even if the insureds' vehicle causes part of the injury, the insureds' vehicle cannot be insured for less than the amount of coverage the insureds have. The vehicle in question cannot be underinsured to itself.[12]

---

[12]We recently reached a similar conclusion in *State Farm Mut. Auto. Ins. Co.* v. *Messinger* (1991) 232 Cal.App.3d 508 [283 Cal.Rptr. 493]. There the plaintiffs and the tortfeasor had separate policies providing the same coverage. We rejected the argument by plaintiffs that they were entitled to benefits under their policy because the settlement reached with the tortfeasor (Ballard) provided less than the amount of their underinsurance coverage. "Ballard's car was insured for an amount *equal* to the uninsured/underinsured coverage the

In its supplemental briefing USAA concedes, as it must, that the Rentsch vehicle is not an "underinsured" vehicle under the Insurance Code. The requirements of subdivision (p), are therefore inapplicable as that section applies only when bodily injury is caused by an underinsured motor vehicle. (Ins. Code, § 11580.2, subd. (p).) As between Ramirez and Rentsch, the two insureds under the Rentsch policy, there is no underinsured motor vehicle. The requirement in subdivision (p)(3) that the insured must exhaust the limits of all liability policies does not apply to the Rentsch suit.[13]

Underinsurance is simply not an issue between Rentsch and Ramirez. USAA would have to pay Ramirez under the bodily injury liability portion of Rentsch's policy, to the extent Rentsch was liable, and under the under-insured motorist provision, to the extent Murr was liable. While it is not clear out of which of USAA's pockets Ramirez would be paid, the minimum payout for USAA pursuant to the stipulated facts would be the $100,000 underinsurance, less the $15,000 setoff for the Murr settlement (subd. (p)(4); *Malone* v. *Nationwide Mutual Ins. Co., supra,* 215 Cal.App.3d 275), or $85,000. When it is certain, as here, that the injured claimant is entitled to recover under one of the two possible coverages the internal accounting concerns of the insurance company cannot be used to withhold payment of the minimum sum to which the claimant is entitled.

Upon Murr's settlement, Ramirez should have been paid $85,000. USAA's response to this conclusion misses the point. First, USAA asks for a stipulation as to other facts not in the record, which Ramirez properly rejected, as these matters are irrelevant to the issue of whether Ramirez can further amend his complaint. Second, USAA urges *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] has some application to this case. We perceive no relevance of the *Moradi-Shalal* case, which abolished the tort of third party bad faith based on unfair business practices as defined by the Insurance Code. In Lake County, Ramirez is suing Rentsch for negligence. In Sacramento County, Ramirez is suing USAA and Riggs for first party bad faith breach of the duty to disclose

---

Messingers carried, and therefore not 'an amount *less* than the uninsured/[underinsured] motorist limits carried' by the Messingers. (§ 11580.2, subd. (p)(2).) Accordingly, the Messingers' underinsurance coverage . . . was never triggered and they were never entitled to collect any underinsurance amounts from State Farm [Citations.]" (At p. 514; original italics.)

[13]As we said in *State Farm Mut. Auto. Ins. Co.* v. *Messinger, supra,* 232 Cal.App.3d 508, "[T]he two [policy] provisions cited . . . [restating statutory language requiring exhaustion of liability policies of the tortfeasor] come into play only after it has been determined that bodily injury has been caused by an underinsured motor vehicle. . . . Implicit in the conditional language of both provisions is the fact that the tortfeasor's vehicle has been determined to be underinsured. Unless the tortfeasor's vehicle is 'underinsured,' one does not go to the next step and determine how much compensation the injured insured will receive pursuant to his or her underinsurance coverage." (At p. 516.)

policy terms. Presumably, after further amending his complaint, Ramirez will add a cause of action in Sacramento County for bad faith refusal to pay benefits due. No third party bad faith is involved in either action and neither is predicated on the statutory duties of an insurer.

## CONCLUSION

The trial court granted judgment on the pleadings on the ground that payment was not yet due under the underinsurance coverage and that a cause of action for bad faith could not arise until that occurred. We conclude USAA had a duty to disclose potential coverage and that breach of this duty could result in a cause of action prior to the time for payment under the policy provisions. As there is a reasonable possibility Ramirez will be able to state a cause of action, the court's ruling was correct. On remand the trial court should permit Ramirez to further amend his complaint in accordance with the views expressed herein.

## DISPOSITION

The judgment is affirmed. Ramirez is to recover costs on appeal.

Blease, Acting P. J., and DeCristoforo, J.,* concurred.

A petition for a rehearing was denied October 22, 1991, and the petition of appellant USAA Casualty Insurance Company for review by the Supreme Court was denied December 12, 1991.

---

*Retired Associate Justice of the Court of Appeal, Third District, sitting under assigment by the Chairperson of the Judicial Council.