Filed 7/8/13  (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| GREG DONLEN,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>FORD MOTOR COMPANY,<br><br>        Defendant and Appellant. | C065722<br><br>(Super. Ct. No. CV35184)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 14, 2013, be modified as follows:

Delete the first full paragraph on page 12 and replace it with the following paragraph:

Ford's standard of relevance is too strict for purposes of the Act.  The Act "is a remedial measure intended for protection of consumers and should be given a construction consistent with that purpose."  (*Robertson v. Fleetwood Travel Trailers of*

*California, Inc.* (2006) 144 Cal.App.4th 785, 801.)  As a result, the plaintiff is not obligated to identify or prove the cause of the car's defect.  Rather, he is required only to prove the car did not conform to the express warranty.  (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1102, fn. 8 (*Oregel*).)  The non-warranty repair, affecting the transmission for a third time and a worn seal for a second time, tends to show the truck did not conform to the express warranty after the last warranty repair and thus was relevant.  Plaintiff was not required to show a closer causal relationship in order for the evidence to survive an objection based on relevance.

This modification does not change the judgment.
The petition for rehearing is denied.

THE COURT:


      NICHOLSON     , Acting P. J.



      MAURO      , J.



      MURRAY      , J.

2

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| GREG DONLEN, | C065722 |
| Plaintiff and Appellant, | (Super. Ct. No. CV35184) |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Calaveras County, Thomas A. Smith, Judge.  (Retired judge of the Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed with directions.

Lemon Law Associates of California and Susan A. Yeck; Rosner Barry & Babbitt and Hallen D. Rosner for Plaintiff and Appellant.

Bowman and Brooke and Robert S. Robinson; Law Office of Kevin J. Tully and Kevin J. Tully; Snell & Wilmer and Mary-Christine Sungaila for Defendant and Respondent.

Plaintiff Greg Donlen appeals from the trial court's grant of a new trial following a jury verdict awarding him damages in his lemon law action against defendant Ford Motor Company (Ford).  He claims the court committed no error at trial and thus had no

1

jurisdiction to grant a new trial on that basis.  Ford also appeals, asserting that if we reverse the new trial order, we should reverse the judgment on the basis of lack of substantial evidence and evidentiary error.  We conclude the trial court erred in granting a new trial, and we reverse its order.  We also affirm the judgment and reject Ford's appeal.

FACTS

Plaintiff purchased a new Ford F-450 Super Duty truck in July 2004.  The truck was covered by an express limited warranty for a period of three years or 36,000 miles, whichever came first.

1.     *Repair history*

Plaintiff took the truck to a dealer four times during the warranty period to have it repaired or checked for problems.  The first warranty repair, in August of 2005 at 11,618 miles, occurred pursuant to a recall notice plaintiff received from Ford.  The recall concerned the truck's transmission.  The notice stated "[t]he TorqShift transmission in your vehicle may have a low/reverse gear set pinion shaft(s) that may become loose, causing metallic particle contamination.  If this condition occurs, it may lead to harsh/slipping shifts and/or harsh/delayed forward/reverse engagements."

For this repair, the technician removed and disassembled the truck's transmission.  He determined a planetary pin, a pin used to hold a gear in place, had come out.  He made the repair as required by the recall, and he reassembled and installed the transmission.

The truck's second visit to the dealer during the warranty period occurred approximately two months later in October 2005 at 13,916 miles.  This visit was also the result of a recall notice.  The recall concerned emission-related components in the engine.  An exhaust pressure sensor was experiencing corrosion, and the onboard diagnostic system may not have been properly monitoring the performance of the emissions control systems.

For this repair, the technician installed a newly designed exhaust pressure sensor and reprogrammed various control modules, including the transmission control module,

2

to enhance the function of the onboard diagnostic and other systems. The transmission control module was reprogrammed to reflect and coordinate with updates made in the power control module, the main computer on the vehicle.

The truck's third visit to the dealer during the warranty period occurred one month later in November 2005 at 15,670 miles. Plaintiff complained that when he was driving downhill and he put the truck into tow/haul mode, it felt like the transmission went into neutral before it would downshift, and it would not upshift.[1] He said this happened whether or not he was pulling a trailer. On one occasion, when he came to a stop, the transmission went into neutral and would not accelerate for a moment before it engaged.

The technician and the service manager took the truck on road tests to see if they could duplicate the problem with the truck in tow/haul mode. They could not, and they found no problem with it.

The truck's fourth visit to the dealer during the warranty period occurred approximately four months later in March 2006 at 17,778 miles. Plaintiff complained the truck made what he described as a "loud thunk" when the transmission engaged in reverse. He also complained the transmission intermittently acted like it wanted to go into neutral when it was in tow/haul mode, or it intermittently engaged in tow/haul mode by itself.

The technician verified plaintiff's concerns. The transmission had "extreme/harsh reverse and forward engagement." It also intermittently would not upshift from first gear to second gear. After replacing a shift solenoid,[2] the technician tested the truck and

---

[1] Tow/haul is a feature in some automatic transmissions that, when turned on, delays upshifting for a short period of time. This provides extra torque for when the vehicle is towing something.

[2] A solenoid is "a coil of wire . . . that when carrying a current acts like a magnet so that a moveable core is drawn into the coil when a current flows and that is used

found it still had the intermittent shift problem from first to second gears. He replaced the power control module. That fixed the tow/haul problem somewhat, but he noticed the truck still intermittently delayed when shifted into reverse. Ultimately, based on directions he received from Ford, the technician removed and tore down the transmission. He found that a lip seal was coming apart on the reverse piston drum. He replaced the drum and reassembled and installed the transmission. His road test of the truck was successful.

After this last repair, plaintiff did not hear the thunk noise. Plaintiff made no complaints to Ford up to and beyond the limited warranty's expiration. The limited warranty expired no later than July 2007, some 16 months after the last warranty repair was performed.

In July 2008, at 45,121 miles, plaintiff took his truck to the dealer. At this point, plaintiff's truck had been out of warranty for at least one year, and plaintiff had driven it for 28 months and over 27,000 miles since the last repair. On this occasion, plaintiff complained the truck once again made a thunk noise and he was unable to put it into reverse. He also stated the tow/haul light was flashing. He had experienced these problems for three weeks prior to bringing the truck in for repair.

The technician verified plaintiff's complaints. The transmission had a long engagement in all gears, and the transmission fluid was dark. The technician tore down the transmission and discovered the reverse clutch piston (a seal) was leaking and its edge was worn off. He overhauled the transmission and installed it into the truck. The repair cost plaintiff approximately $3,000.

By letter dated August 19, 2008, plaintiff demanded Ford repurchase his F-450 truck pursuant to California's lemon law, the Song-Beverly Consumer Warranty Act

_____

[especially] as a switch or control for a mechanical device . . . ." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 1187, col. 1.)

4

(Civ. Code, § 1790 et seq. (the Act)). Ford refused, and plaintiff filed this action. Plaintiff alleged Ford breached the express limited warranty as well as implied warranties of merchantability and fitness. He demanded rescission and restitution, along with damages and a civil penalty.

2.     *Trial*

Ford filed two in limine motions at issue here. The first, in limine motion No. 4, sought to exclude evidence of any other vehicle other than plaintiff's truck. The second, in limine motion No. 11, sought to exclude all evidence of the July 2008 non-warranty repair. Ford argued evidence of other vehicles and the non-warranty repair was inadmissible because it was irrelevant under Evidence Code section 350 and unduly prejudicial under Evidence Code section 352. The court denied both motions, and the jury received evidence of other similar vehicles and the non-warranty repair.

Plaintiff's expert witness, James Hughes, testified the problems addressed by the non-warranty repair were similar to the problems addressed by the warranty repairs: "[Ford] had overhauled [the transmission] previously for a similar problem." It was "inconceivable" to him for a transmission that had no design defects and had been repaired properly to go "belly up in 27,000 miles," as a properly designed and maintained transmission would "in a heartbeat go a hundred thousand miles or more." He stated the transmission had not been fixed by any of the repairs it underwent. In his opinion, each repair was only a "band-aid repair," and the non-warranty repair related back to one of the original repairs.

Hughes believed the transmission was defective before plaintiff bought the truck. He stated the transmission installed in plaintiff's truck was known in the automotive repair industry as "problematic." He based these opinions on the fact that Ford had issued a special service message to dealers in March 2004, some four months before plaintiff bought the truck, informing them the transmission could experience "harsh/slipping engagements, upshifts and/or downshifts" if its adaptive shift strategy

5

was temporarily lost.[3]  Hughes also derived his opinion from speaking with personnel at two independent transmission shops, a Ford dealer, and two research facilities, the Automatic Transmission Rebuilders Association and an entity named Transco.

Ford issued other notices to dealers concerning problems with this transmission. In August 2005, about the time Ford issued its first recall, it issued a technical service bulletin noting trucks with this transmission could experience harsh shifting.  It recommended technicians reprogram the power control module to remedy this.

In July 2007, about the time the warranty expired on plaintiff's truck, Ford issued another technical service bulletin concerning the transmission.  According to this bulletin, this transmission may exhibit erratic shifts at certain speeds, an engagement "shudder" when shifting from drive to reverse or reverse to drive, and what Ford described as a "downshift clunk" while coasting to a stop.  The bulletin stated these concerns might be caused by the power control module or transmission control module calibration.

Hughes test drove the truck a few months before trial.  The shifting was a little harsh, and when he put it in reverse, he heard a loud bang.  It happened two or three other times during the test.  He also heard what he called a "clunk" once while coming to a stop.  The tow/haul function worked fine, the computer sensor showed no trouble codes, and he found no metal in the transmission fluid.  The lack of trouble codes did not mean there was no problem; the bangs and clunks indicated there was a problem.

Plaintiff noticed the transmission continued to act up after Hughes' test drive.  The noise was occurring more often, and it was happening while the car was in drive.

The jury considered only plaintiff's express warranty claim, the trial court apparently having granted Ford's motion for a nonsuit on the implied warranty claims. The jury found for plaintiff.  It concluded Ford failed to repair the truck to match the

---

[3]  The adaptive shift strategy is a feature that adjusts the automatic shifting of gears based on a driver's driving style and habits.

written warranty after a reasonable number of opportunities to do so.  It awarded plaintiff restitution damages of $32,942.76, incidental damages of $2,980.58, and a civil penalty of $1.00.

3.    *Posttrial motions*

Ford moved for judgment notwithstanding the verdict (JNOV) and a new trial.  In its JNOV motion, Ford claimed plaintiff failed to produce substantial evidence showing his truck had a defect covered by the warranty that impaired the truck's use, or that Ford failed to repair any defect covered by the warranty.

In its motion for new trial, Ford claimed plaintiff failed to produce substantial evidence showing his truck was substantially impaired or that Ford failed to repair the vehicle to match the written warranty.  Ford also claimed the trial court committed an error in law when it denied Ford's in limine motion No. 11 and allowed plaintiff to introduce evidence of the July 2008 non-warranty repair.

The trial court denied the JNOV motion.  It found sufficient evidence supported the jury's verdict.

However, the trial court granted the new trial motion.  It ruled it had made an error of law in denying Ford's in limine motion and in allowing plaintiff to introduce evidence of the July 2008 non-warranty repair.  It found "the alleged error of law in the admission of the July 2008 repair visit confused and misled the jury and resulted in undue prejudice to Defendant Ford."

The court wrote:  "Plaintiff did not report to Ford any further problems with his truck [after the February 2006 repair] during the balance of the warranty period.  It was not until July 23, 2008 at 45,121 miles (about one year and 9,000 miles after the expiration of the written warranty) that plaintiff took his truck to the local Ford dealership for additional transmission repairs.  He testified he began experiencing problems with the transmission about three weeks before it was taken to the shop and he has continued to have problems with the transmission following the non-warranty repair.  [¶]  Plaintiff's

7

truck was driven over 27,000 miles during the 29 months between the fourth warranty repair and the subject post-warranty repair in July 2008. The fact plaintiff experienced transmission problems in July 2008 at 45,121 miles constitutes marginal evidence, if any, that Ford breached the written warranty *during the applicable warranty period*. Introduction of this evidence likely led the jury to conclude the fourth warranty repair in February 2006 failed to repair a defect in the transmission. [¶] The court, over defendant's objection, erroneously allowed into evidence testimony concerning the July 2008 repairs. This evidence is highly prejudicial to defendant and warrants a new trial." (Original italics.)

Plaintiff appeals. He contends the trial court erred in granting Ford's motion for new trial. He asserts the court did not err in denying Ford's in limine motion and in admitting evidence of the July 2008 non-warranty repair because, among other arguments, the evidence was relevant and it was not unduly prejudicial. He also disagrees with Ford's assertion that the court granted a new trial on the basis of lack of substantial evidence.[4]

Ford also appeals. It contends that in the event we reverse the trial court's new trial order, we should reverse the judgment in favor of plaintiff or at least remand for new trial due to a lack of substantial evidence supporting the judgment and because the court's denial of Ford's in limine motions was a prejudicial abuse of discretion.

---

[4]   Plaintiff also contends the new trial motion should be reversed because Ford's motion in limine No. 11 was procedurally defective. Because we resolve the appeal on its merits, we do not reach this issue.

DISCUSSION

I

*Plaintiff's Appeal from the Order Granting a New Trial*

Plaintiff claims the trial court abused its discretion by granting a new trial.  He contends there was no error in law on which the court could grant a new trial because its denial of Ford's in limine motion was not error.  He also argues we cannot affirm the new trial order on the ground of lack of substantial evidence, as the court did not specify that as a ground for granting the motion.  We agree with plaintiff on both points, and we reverse the trial court's order.

A.      *Standard of review*

Where a new trial is granted on the basis of legal error, we must first determine whether the ruling the trial court claims was made in error is as a matter of law truly error.  "It is true . . . that, as a general matter, orders granting a new trial are examined for abuse of discretion.  [Citations.]  [¶]  But it is also true that any determination underlying any order is scrutinized under the test appropriate to such determination.  [Citations.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859.)  If there were no legal errors at trial, the order granting a new trial on the basis of error in law will be reversed. (*Treber v. Superior Court* (1968) 68 Cal.2d 128, 136.)  A trial court has no discretion to grant a new trial on the basis of error in law unless its original ruling was erroneous as a matter of law.  (*Ramirez v. USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391, 397.)

Our analysis does not end if legal error is established.  To be entitled to a new trial, the moving party must also show the error was prejudicial; that it affected a substantial right and prevented him from obtaining a fair trial.  (*Bristow v. Ferguson* (1981) 121 Cal.App.3d 823, 826.)  We may not substitute our judgment for the trial court's on the essentially factual question of whether the legal error was prejudicial, and we will reverse only on a strong showing of abuse of discretion.  (*People v. Ault* (2004)

9

33 Cal.4th 1250, 1269-1272; *Treber v. Superior Court, supra,* 68 Cal.2d at p. 136; *Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 159.)

The determination underlying the trial court's order granting a new trial was the asserted error in denying Ford's in limine motion No. 11, where it concluded evidence of the 2008 non-warranty repair was not unduly prejudicial.  Rulings regarding relevancy and Evidence Code section 352 "are reviewed under an abuse of discretion standard." (*People v. Lee* (2011) 51 Cal.4th 620, 643.)  We thus apply that standard to determine whether the court erred in denying Ford's in limine motion.

B.      *Error in law in admitting evidence of non-warranty repair*

The issue raised by the complaint was whether Ford had repaired the truck to conform to the express warranty.  If it had not after a reasonable number of attempts to do so, the Act required Ford to replace the truck or make restitution.  The pertinent provision of the Act, Civil Code section 1793.2, subd. (d)(2), states:  "If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer . . . ."

Ford contended evidence of the non-warranty repair was not relevant to this issue or, even if relevant, was unduly prejudicial.  The trial court originally disagreed with Ford, finding the evidence relevant and not unduly prejudicial.  We conclude the court did not abuse its discretion when it made this ruling.

1.      *Relevance*

"Only relevant evidence is admissible (Evid. Code, § 350; *People v. Crittenden* (1994) 9 Cal.4th 83, 132; *People v. Garceau* (1993) 6 Cal.4th 140, 176-177; *People v. Babbitt* (1988) 45 Cal.3d 660, 681), and all relevant evidence is admissible, unless excluded under the federal or California Constitution or by statute.  (Evid. Code, § 351 . . . .)  Relevant evidence is defined in Evidence Code section 210 as evidence 'having

10

any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' The test of relevance is whether the evidence tends ' "logically, naturally, and by reasonable inference" to establish material facts . . . . [Citations.]' (*People v. Garceau*, *supra*, 6 Cal.4th at p. 177.) The trial court has broad discretion in determining the relevance of evidence (*ibid*.; *People v. Crittenden*, *supra*, 9 Cal.4th at p. 132; *People v. Babbitt*, *supra*, 45 Cal.3d at p. 681), but lacks discretion to admit irrelevant evidence. [Citations.]" (*People v. Scheid* (1997) 16 Cal.4th 1, 13-14.)

Ford contends the non-warranty repair evidence was not relevant because there was no evidence the repair was causally related to the warranty repairs or that it was for the same defect. Ford claims that for non-warranty repair evidence to be relevant in this case, plaintiff must show the evidence relates to warranty repairs or to the same defect previously repaired under warranty. Ford calls this requirement "obvious," although it cites no authority to support its position.

The court did not abuse its discretion in determining evidence of the non-warranty repair was relevant. The evidence has a tendency to establish that the transmission was not fully repaired in conformance with the express warranty. Prior to the expiration of the warranty, the transmission was torn out, disassembled, repaired, and reassembled twice. For the non-warranty repair, the transmission was disassembled a third time, and, as in the last warranty repair, the non-warranty repair uncovered a deteriorating seal. The evidence is relevant to establishing the transmission was not repaired to match the warranty while the warranty was in effect.

Ford argues allowing evidence of post-warranty repairs extends the term of its warranty to whatever limit an expert is willing to testify. We disagree. Evidence that a problem was fixed for a period of time but reappears at a later date is relevant to determining whether a fundamental problem in the vehicle was ever resolved. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 134-135.) Indeed, that a defect first appears after a warranty has expired does *not* necessarily mean the defect did not

11

exist when the product was purchased. (*Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297, 1308.) Post-warranty repair evidence may be admitted on a case by case basis where it is relevant to showing the vehicle was not repaired to conform to the warranty during the warranty's existence.

Ford's standard of relevance is too strict for purposes of the Act. The Act "is a remedial measure intended for protection of consumers and should be given a construction consistent with that purpose." (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 801.) As a result, the plaintiff is not obligated to identify or prove the car's defect. Rather, he is required only to prove the car did not conform to the express warranty. (*Oregel v. American Isuzu Motors, Inc*. (2001) 90 Cal.App.4th 1094, 1102, fn. 8 (*Oregel*).) The non-warranty repair, affecting the transmission for a third time and a worn seal for a second time, tends to show the truck did not conform to the express warranty after the last warranty repair and thus was relevant. Plaintiff was not required to show a closer causal relationship in order for the evidence to survive an objection based on relevance.

2.      *Unduly prejudicial*

Having originally concluded the evidence was relevant, the trial court next determined the non-warranty repair evidence was not unduly prejudicial. Evidence Code section 352 vests a trial court with discretion to exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Ford contends the court erred, as the evidence was of little probative value, and its remoteness from the last warranty repair would confuse the issues and mislead the jury.

"This court has noted that ' "[t]he prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The

12

stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues.*' " (*People v. Karis* (1988) 46 Cal.3d 612, 638; see *Vorse* [*v. Sarasy* (1997)] 53 Cal.App.4th [998,] 1009.)' (*People v. Escudero* (2010) 183 Cal.App.4th 302, 312, italics added (*Escudero*).)

"Next, we look to the plain language of [Evidence Code] section 352 and the sometimes overlooked words, 'substantially' and 'substantial danger.' Evidence is not inadmissible under [Evidence Code] section 352 unless the probative value is 'substantially' outweighed by the probability of a 'substantial danger' of undue prejudice or other statutory counterweights. Our high court has emphasized the word 'substantial' in [Evidence Code] section 352. (*People v. Tran* (2011) 51 Cal.4th 1040, 1047 ['But Evidence Code section 352 requires the exclusion of evidence only when its probative value is *substantially* outweighed by its prejudicial effect.']; cf. *People v. Geier* (2007) 41 Cal.4th 555, 585.)

"Trial courts enjoy ' "broad discretion" ' in deciding whether the probability of a substantial danger of prejudice substantially outweighs probative value. (*People v. Michaels* (2002) 28 Cal.4th 486, 532 []; *People v. Perry* (2006) 38 Cal.4th 302, 318; see *People v. Memro* (1995) 11 Cal.4th 786, 866 [].) A trial court's exercise of discretion 'will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)" (*People v. Holford* (2012) 203 Cal.App.4th 155, 167-168, fn. omitted, original italics.)

We cannot say the trial court's admission of the non-warranty repair evidence was so arbitrary or patently absurd it resulted in a manifest miscarriage of justice. The court was within its discretion when it determined the evidence's probative value was not substantially outweighed by its probability of creating undue prejudice or confusing the

13

issues. We disagree with Ford's assertion that the evidence was of little probative value. The evidence was admitted to show the truck needed a repair after the warranty expired that was similar to one the truck underwent before the warranty expired, and it tended to show the truck's transmission had not been repaired to conform to the warranty during the warranty period.

Ford argues the evidence would confuse the jury because plaintiff failed to connect the post-warranty repair to the last warranty repair. We disagree with this assertion as well, for the post-warranty repair by its nature is connected to the last warranty repair. The transmission had been overhauled twice while under warranty, and the non-warranty overhaul was caused by a similar malfunction as that which necessitated the second overhaul. Plaintiff's expert's testimony that the repairs were related certainly was damaging to Ford, but it would not invoke a uniquely emotional bias to the jurors against Ford unrelated to the evidence's relevance. Its force did not create confusion. Under the facts of this case, the possibility that the evidence of the non-warranty repair could confuse the issues or mislead the jury did not substantially outweigh the evidence's probative value.

Because the trial court did not abuse its discretion when it denied Ford's in limine motion and admitted the non-warranty repair evidence, it did not commit an error in law, and, thus, it did not have discretion to grant a new trial on that basis.

C.     *Insufficient evidence as ground for new trial*

Ford asserts that error in law was not the only basis for the trial court's grant of a new trial. It contends the court also granted a new trial on the basis of insufficiency of the evidence, one of the statutory grounds upon which a court is authorized to grant a new trial. (Code Civ. Proc., § 657.) We are required to affirm an order granting a new trial if it should have been granted upon any statutory ground stated in the motion, with one exception applicable here. We may not affirm the order on the ground of

14

insufficiency of the evidence "unless such ground is stated in the order granting the motion . . . ."  (Code Civ. Proc., § 657.)

Here, the trial court's order does not state it granted the new trial motion on the ground of insufficient evidence.  Rather, it states it granted the motion due to an error in law; namely, the admission of unduly prejudicial evidence.  Because the order does not specifically state it is granted based on insufficiency of the evidence, we cannot affirm the order on that basis.  (Code of Civ. Proc., § 657.)  "The right to move for a new trial is a creature of statute and the procedure prescribed by law must be closely followed. [Citation.]"  (*Collins v. Sutter Memorial Hospital* (2011) 196 Cal.App.4th 1, 17.)

Ford contends the court effectively stated it granted the motion on the ground of insufficient evidence.  It bases this assertion on the court's statement that the "fact plaintiff experienced transmission problems in July 2008 at 45,121 miles constitutes marginal evidence, if any, that Ford breached the written warranty *during the applicable warranty period*."  (Original italics.)

Ford misconstrues the court's statement.  The court's reference to the weight of the non-warranty repair evidence does not indicate there was insufficient evidence in the whole record to support the verdict.  Rather, the court stated only its new view that the evidence of the non-warranty repair was marginal evidence to support plaintiff's claim.  The court's statement merely indicates the court was weighing the evidence's probative value against its potential for prejudice, as required by Evidence Code section 352.  The new trial was granted solely on that purely legal ground.  Because the court did not state it was granting the motion on the basis of insufficient evidence, we cannot affirm the new trial order on that ground.

II

*Ford's Appeal from the Judgment*

Having concluded the court erred in granting a new trial, we must turn to Ford's appeal from the judgment in favor of plaintiff.  Ford claims the judgment is not supported

15

by substantial evidence. It also asserts the trial court committed prejudicial error by denying its in limine motion Nos. 4 and 11 and admitting evidence of the non-warranty repair and by admitting evidence of "other similar vehicles." We disagree with Ford. Substantial evidence supports the verdict, and the trial court did not abuse its discretion in admitting the contested evidence.

A.     *Sufficiency of the evidence*

"A plaintiff pursuing an action under the Act has the burden to prove that (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element). (Civ. Code, § 1793.2; *Ibrahim v. Ford Motor Co.* (1989) 214 Cal.App.3d 878, 886-887.)" (*Oregel, supra,* 90 Cal.App.4th at p. 1101.)

Ford challenges the sufficiency of the evidence on the failure to repair element. It asserts plaintiff failed to introduce any evidence establishing that Ford failed to repair the truck to conform to the written warranty. The evidence of the non-warranty repair did not establish this point, Ford argues, because it failed to show "the same root cause or mechanism -- i.e., the same defect -- was involved" in the fourth warranty repair and the non-warranty repair. Moreover, Ford asserts plaintiff's own testimony was evidence the fourth warranty repair was successful, as plaintiff stated he drove the truck without incident after that repair for 28 months and 27,000 miles, one year beyond the expiration of the express warranty. Ford asserts plaintiff never overcame this evidence except with speculation and unfounded hearsay by plaintiff's expert witness.

We conclude sufficient evidence supports the jury's verdict that Ford did not bring plaintiff's truck into conformity with the warranty before the warranty expired. Plaintiff's expert witness, Mr. Hughes, testified the transmission was defective before

16

plaintiff purchased the truck in 2004. Ford had already issued a special service message concerning the transmission before plaintiff purchased the truck. It had warned of harsh shifting if the transmission's adaptive shift feature was temporarily lost. The transmission was known as problematic among industry personnel he had contacted.

Ford issued a recall notice in August 2005 to repair the transmission. A pin holding a gear could come lose, causing metallic contamination and harsh shifting into reverse. Ford disassembled plaintiff's transmission, found the loose pin, repaired it, reassembled the transmission, and reinstalled it into plaintiff's truck.

At about the same time, Ford issued a technical service bulletin concerning the transmission. The bulletin noted the transmission could experience harsh shifting, and directed technicians to reprogram the power control module.

In November 2005, plaintiff returned the truck to the dealer, complaining the transmission went into neutral before it would downshift, and it would not upshift. It also once went into neutral when he stopped. The dealer could not replicate the problem.

In March 2006, plaintiff again returned the truck to the dealer, complaining it made what he described as a "loud thunk" when he shifted into reverse, and the transmission wanted to go into neutral when it was in the tow/haul mode. The dealer disassembled the transmission and found a deteriorating seal. He repaired the seal, overhauled the transmission, and reinstalled it into the truck.

In July 2007, at about the time the warranty expired and one year before the 2008 repair, Ford issued another technical service bulletin concerning this transmission. This bulletin stated the transmission may experience erratic shifts, or what Ford described as a "downshift clunk," similar to what plaintiff had experienced.

In July 2008, 28 months after the last repair and one year after the warranty expired, plaintiff returned the truck to the dealer for a fifth time, complaining he again heard a loud thunk and had difficulty shifting into reverse. For a third time, the

17

technician disassembled the transmission, and again found a leaking seal. He overhauled the transmission and reinstalled it into the truck.

When the expert test drove the truck in 2010, it still was not operating as expected. He encountered an intermittent clunk when he put it into reverse and when he decelerated, just as plaintiff had complained in 2006.

This evidence constitutes substantial evidence in support of the jury's verdict. The jury could conclude from this evidence that Ford did not repair the truck's transmission to conform to the express warranty during the warranty period, and indeed may not have been able to have brought it into conformity with the warranty at any time.

B.    *Denial of in limine motions*

Ford asserts the trial court abused its discretion when it denied its in limine motions to exclude evidence of other vehicles and of the non-warranty repair. We have already concluded the court did not abuse its discretion when it denied the in limine motion as to the non-warranty repair, and we will not repeat that discussion here.

Ford contends admitting evidence of other vehicles was prejudicial. Denying its motion opened the door for plaintiff's expert, Mr. Hughes, to testify that the F-450 transmission was defective because he had heard from others that it was "problematic." Hughes also testified of similar problems with other F-450 transmissions. This testimony, Ford claims, was made without foundation or support and should have been disallowed.

We disagree with Ford. Hughes' "other vehicle" testimony was not unduly prejudicial. It did not concern simply other vehicles. It was limited to the transmission model Ford installed in plaintiff's truck and other vehicles. Hughes described what Ford itself had done to notify dealers and technicians about problems with this transmission model. Thus, everything about which he testified that applied to other vehicles applied equally to plaintiff's vehicle. Such evidence certainly was probative and not unduly prejudicial.

Ford faults Hughes for testifying that others he had contacted believed this transmission line was problematic.  There was no error.  As an expert witness, Hughes was entitled to rely upon hearsay evidence that may reasonably be relied upon to form his opinion.  (*People v. Carpenter* (1997) 15 Cal.4th 312, 403.)  Hughes contacted technicians and dealers in the field and transmission research organizations to reach his conclusion, and his sources were reasonable ones in this circumstance on which he could rely.  The court did not abuse its discretion when it denied the in limine motion to exclude evidence of other vehicles.

## DISPOSITION

The order granting a new trial is reversed.  The matter is remanded to the trial court to enter judgment in favor of plaintiff, which judgment is hereby affirmed.  Costs on appeal are awarded to plaintiff.  (Cal. Rules of Court, rule 8.278(a).)


      NICHOLSON   , Acting P. J.


We concur:


     MAURO    , J.


     MURRAY   , J.


19