Filed 9/28/20  Saurman v. Gnirob Capital Corp. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT ALEXANDER SAURMAN et al.,<br><br>     Plaintiffs and Respondents,<br><br>          v.<br><br>GNIROB CAPITAL CORPORATION,<br><br>     Defendant and Appellant. | G057166<br><br>(Super. Ct. No. 30-2015-00784439)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Horvitz & Levy, Mitchell C. Tilner, Dean A. Bochner, Joshua C. McDaniel; Haight Brown & Bonesteel, and Robert S. Rucci for Defendant and Appellant.

The Simon Law Group Robert T. Simon; Williams Iagmin, and Jon R. Williams for Plaintiffs and Respondents.

*          *          *

Appellant Gnirob Capital Corporation owns Pelican Isle, a restaurant in Huntington Beach. On September 14, 2014, a restaurant customer, Kathleen Saurman, fell and broke her hip. Kathleen tragically died five days later from complications following hip surgery. Her husband, Robert (Bob) Saurman, and her adult son, Robert Steven Saurman, (collectively "plaintiffs") sued Gnirob for wrongful death.

The parties disputed whether Kathleen's fall was caused by defective stairs. Before trial, Gnirob moved to exclude hearsay statements Kathleen made about her fall. In opposition, plaintiffs argued that Kathleen's statement to Bob, "[r]ight after [she] fell," that "I didn't see the stairs" was admissible as a spontaneous utterance. The trial court summarily granted Gnirob's motion in limine and excluded the hearsay statement. Plaintiffs never renewed their opposition to the motion in limine during trial.

The jury concluded Gnirob was negligent, but its negligence was not a substantial factor in causing Kathleen's death. After judgment was entered in Gnirob's favor, plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV) or a new trial. The trial court denied the JNOV, but granted the new trial motion on the sole ground the court prejudicially erred in excluding Kathleen's hearsay statement to Bob that she did not see the stairs.

Gnirob contends the trial court erred in granting the new trial motion because as a matter of law, the court did not abuse its discretion in granting Gnirob's motion to exclude Kathleen's hearsay statement. Gnirob further contends the exclusion of Kathleen's statement was not prejudicial because the jury concluded Kathleen did not trip on the steps and Kathleen's hearsay statement was cumulative to other statements on the location of her fall. Finally, Gnirob contends that if we affirm the trial court's order granting a new trial, we should provide guidance on certain jury instructions.

As discussed further below, we agree with the trial court it abused its discretion in excluding Kathleen's statement because plaintiffs made an adequate offer of proof. We also agree with the trial court its error was prejudicial because it involved a

2

key issue at trial, and it is reasonably probable the jury would have returned a more favorable verdict had the statement been admitted. Finally, Gnirob asks us to provide guidance to the trial court on certain jury instructions if we affirm the new trial order. We decline to provide the requested guidance because Gnirob has not shown the jury instructions necessarily will be given at the new trial or the trial court's decision on those instructions is a pure legal issue rather than one dependent on the facts presented at the new trial. Accordingly, we affirm the trial court's order granting a new trial.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Kathleen's Accident and Death*

Pelican Isle is a restaurant and bar overlooking Huntington Harbor. When entering the restaurant, customers pass through a hallway, which has a restroom on the right side. After passing the entrance hallway, there are dining tables arranged in rows on the left and a bar with barstools on the right. The tables on the left are divided between two floors: a ground level and a slightly elevated level. A two-step stairway, located between two ground-level tables, leads from the ground level to the elevated level. The stairway has guardrails on either side, and the rails extend up and then run from wall to wall, fully enclosing the raised seating area.

On the afternoon of September 14, 2014, Kathleen went to Pelican Isle to celebrate her 60th birthday. She was accompanied by her husband Bob, and their friends, Bruce and Debbie Galien. After entering the restaurant, Kathleen stopped to use the restroom while the others continued into the dining area. Bob, Bruce, and Debbie walked past the crowded bar and found an open table at the very end of the row of tables on the ground level, next to the harbor-front windows.

After a few minutes, Bob saw Kathleen coming into the main restaurant area, "in direct line with the hallway coming from the restroom." He waved his hand to catch her attention. After Kathleen acknowledged she saw him, Bob looked away. When

3

he looked back, he could not see Kathleen. He "immediately" proceeded to where he last saw Kathleen.

Bruce Galien also saw Kathleen as she walked toward their table. He noticed people standing near the bar, but no one standing near the raised area. When Kathleen was 10 feet away, Bruce saw her "abruptly turn[ ] left, . . . right where th[e] stairs are located, and then immediately fell forward." Bruce lost sight of Kathleen. Bob and Bruce left the table to check on Kathleen.

When Bob and Bruce reached Kathleen, they found her sitting on the stairway. According to Bob, Kathleen was sitting on the stairway's upper step with her legs extended toward the bar. According to Bruce, she was sitting on the lower step with her elbows on the upper step and her legs either outstretched or curled up. Bruce did not see anything on the floor that would cause Kathleen to trip, but acknowledged she could have tripped on someone's foot or on the leg of a barstool.

The restaurant's bartender, Jose Luis Villasenor Nito, did not see Kathleen fall but he observed Kathleen on her knees a few feet in front of the steps. Villasenor approached and asked if he could help, but Bob said "she was fine." Villasenor also asked if they wanted him to call 911, but Bob said "no." Villasenor did not see anything indicating Kathleen was in pain. He brought a chair over and then went to get Jessie Perez, the on-duty manager.[1]

Bob tried to help Kathleen stand up but realized she was in too much pain to stand. Bruce also noticed Kathleen was in a lot of pain. Bruce set a chair at the foot of the stairs, and the two men lifted Kathleen onto the chair. Perez arrived and asked if they needed help or if he could call 911, but they told him Kathleen only needed to rest. Perez could not tell if Kathleen was in pain.

---

[1] Both Bob and Bruce denied that Villasenor approached them and offered assistance.

4

A few minutes later, Bob and Bruce carried Kathleen outside to the car. While they were driving to the Saurmans' home, they decided Kathleen needed medical care, so Bob dropped off the Galiens and took Kathleen to the hospital. There, Bob learned Kathleen had a broken hip. Kathleen had hip surgery the next day. Following the hip surgery, Kathleen developed an inflamed bowel, and she died from the infection five days after the accident.

B. *Gnirob's Motion to Exclude Kathleen's Hearsay Statements*

Whether Kathleen tripped on the stairs was a key issue. The complaint against Gnirob alleged that the stairs and surrounding area were dangerous and that Kathleen had "tripped on the stairs in the bar area and fell to the floor, sustaining serious injuries" that led to her death.

Gnirob filed a pretrial motion to exclude Kathleen's statements about how or why she fell, arguing the statements were inadmissible hearsay. The statements were made to family members or noted in her medical records. In its written motion, Gnirob addressed several hearsay exceptions it anticipated plaintiffs would raise. It argued Kathleen's statements to her husband and son were inadmissible under the dying declaration exception to the hearsay rule because there is no evidence Kathleen knew she was dying when she made the statements. As to the statements in the medical records, Gnirob argued the business records exception did not apply for several reasons, including that the statements did not reflect the attending physician's first hand observation of a fact, condition, or event.

In opposition, plaintiffs argued that Kathleen's statement to Bob when he approached her after she fell was admissible as a spontaneous utterance. Plaintiffs asserted that "[r]ight after [Kathleen] fell, Bob Saurman approached and she said 'I didn't see the stairs.'" They argued the statement was admissible as a spontaneous statement because it was made "right after she fell on the stairs and fractured her hip; this event was clearly startling enough to render the utterance spontaneous and unreflecting. Second,

[Kathleen] was still under the stress of her fracture and she had no opportunity for reflection, guaranteeing the trustworthiness of her statements. Third, [her] utterance was about how she fell, which is obviously related to the circumstance of the fall preceding her statements." As to the statements reflected in the medical record, plaintiffs argued those statements also were admissible as excited utterances because "[d]ue to her injuries, she had not calmed down and she had no opportunity for reflection prior to speaking to the doctors at the hospital." They further argued the statements were admissible under the hearsay exceptions for medical records and medical treatment, and claimed they would call the author of the report to lay a proper foundation for the medical records.

At the hearing on the motion in limine, the parties only discussed whether the statements in the medical records were admissible. For example, Gnirob's counsel argued the statements were "too remote in time [from the fall] to be considered excited utterances." When the trial court granted the motion in limine to exclude Kathleen's hearsay statements and began proceeding to the next motion, plaintiffs' counsel interjected, "Your honor, I think we need to go back to [the prior motion] because it seems you're handing the defense a defense verdict because we can't bring in what the decedent actually said about how she fell because she's dead." Counsel also reminded the court that aside from the medical records, plaintiffs wanted to admit Kathleen's statement to her husband that she did not see the stairs. The court responded that she had read the "papers," "[so] at this time I've ruled, you've made your record. And at a certain point I don't think you want to argue with the court, okay?" Plaintiffs never renewed their objection to the court's evidentiary ruling excluding Kathleen's statement to Bob.[2]

---

[2] During the trial, the court reconsidered its decision to exclude the statements in the medical records, ruling plaintiffs could elicit those statements if they could show the statements were relevant to diagnosis and treatment. Ultimately, however, plaintiffs could not get the statements admitted because the treating doctor could not remember whether Kathleen told him where she fell.

C. *Jury Verdict and New Trial Motion*

The jury found Gnirob negligent, but that its negligence was not a substantial factor in causing Kathleen's death. Judgment was entered in Gnirob's favor.

As noted, plaintiffs filed a motion requesting a JNOV or a new trial, raising numerous grounds. The trial court denied the JNOV motion, but accepted plaintiffs' argument they were entitled to a new trial because of a legal error, specifically, the court's exclusion of Kathleen's spontaneous statement to Bob concerning the location of her fall. The trial court explained:

"Kathleen Saurman allegedly described her fall after she had fallen, stating that she had not seen the stairs, while arguably under the stress of excitement from the fall. A fall, particularly one that resulted in a hip fracture, is an occurrence startling enough to produce a nervous excitement and render the utterance spontaneous and unreflecting. Plaintiffs proffered in their opposition to the motion in limine that the utterance occurred right after the fall, as Kathleen Saurman's husband approached her, which would have been before there had been time to contrive or misrepresent. The utterance was related to the circumstance of the occurrence preceding it. Thus, Kathleen Saurman's statement to her husband right after her fall was admissible as a spontaneous statement."

The trial court also found its exclusion of that spontaneous statement was prejudicial to the plaintiffs. It explained the location of Kathleen's fall at the restaurant was the chief liability issue disputed at trial. According to the court, "[t]here was conflicting testimony as to her location and whether she even fell on the stairs. If the spontaneous statement had been presented, defense counsel could have still argued that no person witnessed Kathleen Saurman's fall on the stairs, but then could not have argued that there was no evidence placing her at the stairs and that she did not say that she did not see the stairs."

II

DISCUSSION

A. *The Trial Court Properly Granted the New Trial Motion*

"An order granting or denying a motion for new trial will not be disturbed on appeal without a showing of manifest and unmistakable abuse of discretion." (*Prescott v. City of Orange* (1942) 56 Cal.App.2d 144, 150.) Where the new trial motion is granted based on a legal error, such as an erroneous evidentiary ruling, we review the trial court's determination de novo. (See *Parker v. Womack* (1951) 37 Cal.2d 116, 123 (*Womack*), overruled on another point by *Butigan v. Yellow Cab Co.* (1958) 49 Cal.2d 652, 660.) "[W]hen no error has been committed, there is no basis for the exercise of discretion." (*Womack, supra,* at p. 123.) Accordingly, a trial court has no discretion to grant a new trial on the basis of a legal error unless its original ruling was erroneous as a matter of law. (*Donlen v. Ford Motor Co.* (2013) 217 Cal.App.4th 138, 147 (*Donlen*).)

The decision whether to admit a statement as a spontaneous declaration is reviewed for abuse of discretion. (*People v. Phillips* (2000) 22 Cal.4th 226, 235-236.) The trial court abuses its discretion in excluding evidence if its ruling "falls outside the bounds of reason." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226.) A ruling that constitutes an abuse of discretion has been described as one that is "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) A trial court's discretion is not unlimited, however. It must in all cases, be exercised "within the confines of the applicable legal principles." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

Evidence Code section 1240 states: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." As interpreted by our Supreme Court, to be admit a spontaneous utterance:

8

"(1) there must be some occurrence startling enough to produce . . . nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." (*People v. Sanchez* (2019) 7 Cal.5th 14, 39, internal quotations and citation omitted.) In this case, the first and third requirements are clearly met. An abrupt fall causing serious injuries is a startling occurrence. Kathleen's statement to Bob that she did not see the stairs relates to the circumstances of the fall.

Plaintiffs argue they also met the second requirement because they made an offer of proof that Kathleen's statement was made right after she fell. Gnirob complains plaintiffs failed to specify the exact time Kathleen made her statement, describe Kathleen's voice and demeanor, or explain the circumstances leading to her statement, such as whether Kathleen responded to a question. As our Supreme Court has explained, "[a] number of factors may inform the court's inquiry as to whether the statement in question was made while the declarant was still under the stress and excitement of the startling event and before there was 'time to contrive and misrepresent.' [Citation.] Such factors include the passage of time between the startling event and the statement, whether the declarant blurted out the statement or made it in response to questioning, the declarant's emotional state and physical condition at the time of making the statement, and whether the content of the statement suggested an opportunity for reflection and fabrication. [Citations.] This court has observed, however, that these factors 'may be important, but solely as an indicator of the mental state of the declarant.' [Citation.] For this reason, no one factor or combination of factors is dispositive." (*People v. Merriman* (2014) 60 Cal.4th 1, 64.)

The issue here is not whether plaintiff's could have presented a more complete offer of proof, but whether the presented the basis for admitting Kathleen's

9

statements, it is not necessary for an adequate offer of proof. We conclude plaintiffs' assertion that Kathleen's made her statement "[r]ight after [Kathleen] fell" is sufficient to show Kathleen did not have time to contrive or misrepresent. (Cf. *People v. Penunuri* (2018) 5 Cal.5th 126, 152 [spontaneous statement was properly admitted even where it was elicited 20 to 40 minutes after the event in question]; *People v. Brown* (2003) 31 Cal.4th 518, 541 [trial court properly found statement made two and a half hours after a shooting to be a spontaneous utterance]; *People v. Raley* (1992) 2 Cal.4th 870, 893-894 [statement admitted as spontaneous utterance 18 hours after event], superseded by statute on other grounds as stated in *People v. Brooks* (2017) 3 Cal.5th 1, 63, fn. 8.)

Gnirob notes that our Supreme Court has stated that "'[t]he discretion of the trial court is at its broadest' when it determines whether an utterance was made while the declarant was still in a state of nervous excitement. [Citation.]" (*People v. Thomas* (2011) 51 Cal.4th 449, 496.) The trial court, however, summarily excluded all hearsay statements Kathleen made to her family without providing any reasoning. It did not expressly determine Kathleen's state of mind when she made the statement to Bob. When a trial court issues such a ruling, the "appellate court [is] left with the nebulous task of determining whether the ruling that was purportedly made was within the authority and discretion of the trial court and was correct." (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 235; cf. *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 255, [when a trial court issues a blanket ruling on numerous evidentiary objections without providing any reasoning, there "is hardly a ruling, as it could not provide any meaningful basis for review."].) Thus, it is unclear whether the trial court exercised its discretion to determine Kathleen's state of mind.

Moreover, an exercise of discretion without evidence on which to predicate the exercise is outside the "bounds of reason." (See *Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1417 ["Abuse of discretion has at least two components: a factual component that is governed by a standard such that the substantial

10

evidence must support the court's findings and a legal component."].) Here, the trial court's ruling excluding hearsay statements may have been predicated on its factual determination that Kathleen was not still in a state of nervous excitement when she made the statement. However, no substantial evidence supported that finding. There was no evidence of Kathleen's voice or demeanor or the surrounding circumstances when she made the statement that would have indicated Kathleen was not in a state of nervous excitement. We also note that to the extent the trial court had questions about Kathleen's mental state at the time she made the statement, it denied plaintiffs the opportunity to present further argument or evidence when the court granted Gnirob's pretrial motion to exclude hearsay statements and curtailed further argument on the motion. In sum, we conclude plaintiffs made an adequate offer of proof that Kathleen's statement to Bob that she did not see the stairs was a spontaneous utterance. The trial court, as a matter of law, erred in summarily excluding the statement.

Gnirob argues that any legal error in excluding Kathleen's statement that she did not see the stairs was not prejudicial. (See *Donlen*, *supra*, 217 Cal.App.4th at p. 147 ["To be entitled to a new trial, the moving party must also show the error was prejudicial."].) We disagree. "We may not substitute our judgment for the trial court's on the essentially factual question of whether the legal error was prejudicial, and we will reverse only on a strong showing of abuse of discretion." (*Ibid.*; see *People v. Ault* (2004) 33 Cal.4th 1250, 1271 [trial courts "are best positioned to determine whether errors or irregularities in proceedings before them were prejudicial"].)

Here, the trial court found prejudice because "[t]he critical issue at trial was the location of Kathleen Saurman's fall," and "[t]here was conflicting testimony as to her location and whether she even fell on the stairs." "If the spontaneous statement had been presented, defense counsel . . . could not have argued that there was no evidence placing her at the stairs and that she did not say that she did not see the stairs." The trial court's prejudicial determination was well within the bounds of reason. Kathleen's statement

11

that she did not see the stairs supports an inference she tripped on the stairs. Because there was no eyewitness to or video evidence showing why or how Kathleen fell, the statement of the person who fell is highly probative. It is reasonably probable the jury would have reached a more favorable result had the statement been admitted. (See *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715 ["'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*."].)

Gnirob argues the jury's verdict that Gnirob's negligence was not a substantial factor in causing Kathleen's death indicates the jury rejected Bob's testimony that he found Kathleen sitting on the stairs. Gnirob claims the jury's rejection of Bob's testimony meant it discredited him, and thus the jury also would have discredited his testimony that Kathleen told him she did not see the stairs. However, the jury still could credit Bob's testimony that Kathleen was sitting on the stairs when he found her, and still conclude Kathleen did not trip on the stairs. There were two tables on either side of the stairway and the restaurant was very crowded. The jury could have determined that Kathleen tripped on something close to the stairs, such as a foot or a chair leg, and then crawled or pulled herself onto the stairs to avoid further contact with other restaurant patrons. In sum, we see no basis to second-guess the trial court's conclusion that exclusion of Kathleen's statement that she did not see the stairs was prejudicial.

B. *We Decline to Provide an Advisory Opinion on Jury Instructions*

Having affirmed the trial court's order for a new trial, Gnirob requests we provide guidance on remand whether certain jury instructions should have been given at trial. It argues that whether the jury instructions were correct and should have been given present "'legal issues that necessarily will arise later in the proceeding.'" We decline to provide that guidance because Gnirob failed to show the same instructions would be given at the new trial. Nor did Gnirob show the trial court's decision on those

12

instructions is a pure legal issue, or the factual record cannot be supplemented to support giving those instructions.

For example, Gnirob contends the trial court erred in ruling that "substantial evidence did not support an assignment of fault to . . . the restaurant's landlord," and thus it erred in refusing its requested jury instruction on landlord duties. Given that Gnirob's claim of error is premised on a court's factual determination, it does not present a pure issue of law.

Gnirob also argues the trial court erred in giving a willful suppression instruction because the undisputed evidence at trial showed its owner had no knowledge of Kathleen's accident or that litigation was contemplated when Gnirob destroyed the video it had of the area where Kathleen fell. However, both Villasenor and Perez testified they might have told the owner about Kathleen's accident two to three days later. Plaintiffs' counsel sent a preservation request two months after the accident, and Gnirob acknowledged in one of its discovery responses it "mistakenly" stated that surveillance video was available for "several months" before being automatically deleted. In sum, there were factual disputes whether the video that might show Kathleen's fall was intentionally deleted. Accordingly, whether the willful suppression instruction should have been given does not present a pure legal issue.

Finally, Gnirob contends the trial court should not have given a negligence per se instruction. The court's instruction sets forth several provisions of the 2001 Building Code, and then directs the jury to decide (1) whether Gnirob violated those provisions, and (2) where any violation was a substantial factor in causing the harm. Gnirob contends the 2001 Building Code did not apply because its expert testified, without contradiction, the code applied only where any renovations altered a major component of the building's structure. But plaintiffs at a new trial could present contrary expert testimony, such as an expert opinion that the changes to the guardrails required compliance with the relevant guardrail provisions in the 2001 Building Code. Put

13

differently, Gnirob failed to show plaintiffs are precluded from offering new evidence on this issue. In any event, plaintiffs have asserted the stairway and guardrails did not even comply with the 1979 Building Code. Thus, the same negligence per se instruction might not be given at the new trial. We may offer guidance on legal issues, not those that are dependent on a fluid factual dispute. (Code Civ. Proc., § 43.) In sum, we decline to exercise our discretion to provide guidance on the specified jury instructions.

III

DISPOSITION

The order granting the new trial motion is affirmed. Respondents are entitled to their costs on appeal.

ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

14
